**UNITED STATES of America, Appellee,**

v.

**John J. O'CONNOR,
Defendant-Appellant.**

**No. 974, Docket 77–1378.**

United States Court of Appeals,
Second Circuit.

Argued June 5, 1978.

Decided July 10, 1978.

Gerard M. Damiani, Bardonia, N. Y. (McCormack & Damiani, and James W. Hunt, Bardonia, N. Y., of counsel), for defendant-appellant.

Richard F. Lawler, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., Richard D. Weinberg, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before FEINBERG and MANSFIELD, Circuit Judges, and WERKER, District Judge.*

* Hon. Henry F. Werker, United States District Judge for the Southern District of New York, sitting by designation.

1. See, e. g., *United States v. Williams,* 577 F.2d 188 (2d Cir. 1978); *United States v. Benedetto,* 571 F.2d 1246 (2d Cir. 1978); *United States v. Gubelman,* 571 F.2d 1252 (2d Cir. 1978); and

FEINBERG, Circuit Judge:

John J. O'Connor appeals from his conviction, after an eight-day jury trial in the United States District Court for the Southern District of New York before Irving Ben Cooper, *J.,* on two counts charging that he took money from meat packing companies in connection with his official duties as a government inspector. 21 U.S.C. § 622. Appellant received concurrent sentences of two years on each count, with all but six months suspended. This case is another in a series of appeals in this court challenging the Government's use of other crimes evidence in a criminal prosecution.[1] Unlike those decisions, however, the admission of such evidence was clearly improper here and we reverse the judgment of conviction and remand for a new trial.

I

The relevant evidence in this close case may be briefly summarized, particularly since appellant does not claim that it was insufficient. Appellant was employed by the United States Department of Agriculture as a meat inspector from March 1970 until January 1977, when he was suspended. By virtue of his broad administrative power to enforce sanitation regulations, appellant was in a position to extort bribes from the meat packing plants he inspected. The jury could properly have found that appellant did exactly that at the plants of West Harlem Pork Center, Ltd., and Kupferberg Brothers, the subject of the two counts of the indictment on which appellant was convicted.[2] In the Government's direct case, the manager of West Harlem testified that in the period from July 1974 to January 1975, O'Connor received regular weekly payments of $25 in cash. The payments

*United States v. Corey,* 566 F.2d 429 (2d Cir. 1977).

2. Appellant was acquitted on a third count which charged him with taking money from F. Strassberger, Inc.

were made face to face with little comment by either party and in the absence of any witness. One of the owners of Kupferberg Brothers gave similar testimony, except that the payments were $15 per week.

At this point in the trial, the parties focused on the Government's offer of proof that appellant had taken bribes at other plants, the so-called other crimes evidence. Commendably, both counsel submitted memoranda and the district judge heard argument on whether this evidence should be admitted. In the course of the colloquy, defense counsel pointed out, among other things, that knowledge and intent were not at issue, and moreover, that on cross-examination of the prior Government witnesses he had deliberately refrained from any substantial attempt to attack their testimony on the issue of identification of appellant. The Government argued that the other crimes evidence was admissible to show appellant's intent, knowledge, lack of mistake, and common design or plan. After the judge overruled appellant's objections, the Government presented two more witnesses in its case-in-chief: an owner of J. M. Vorcheimer and a retired butcher foreman at George Korn & Sons, both meat packing plants in Brooklyn.[3] Each testified to handing over payments of weekly cash sums to appellant—$50 in one case, $25 in the other—with no witnesses and little or no conversation.

The principal evidence offered in defense came from a special agent of the FBI, a proffer discussed in more detail below, and from appellant, who denied that he had ever taken money or anything of value from any of the witnesses who said they had paid him. The defense also introduced the testimony of three character witnesses and two other FBI agents, one of whom was appellant's brother. In the Government's rebuttal, the manager of Omaha Hotel Supply Corporation, still another meat packing company, testified that he gave O'Connor, then an inspector at his plant, a bag of meat each week. A butcher at the plant corroborated this testimony. Finally, O'Connor was recalled to the stand and denied receiving the packages.

The jury deliberated for the better part of two days. It was apparent from the several notes that it sent to the judge and from other indications that the jury had difficulty reaching a verdict.[4] The judge twice gave supplemental instructions based upon *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), and the jury finally returned a verdict of guilty on two counts and, as already noted, not guilty on the third. This appeal followed, in which appellant argues for reversal on a number of theories, but concentrates most of his fire on the claim that the other crimes evidence should have been excluded.

## II

Our canvas of the principles governing admission of other crimes evidence, see, e. g., *United States v. Williams,* supra; *United States v. Benedetto,* supra; and *United States v. Gubelman,* supra, is too recent to justify an extensive statement of the applicable rules here, and familiarity with those opinions will be presumed. Although we there initially pointed out that the new Federal Rules of Evidence adopted the "inclusionary" approach to other crimes evidence, we went on to stress that "[t]his does not mean . . . that evidence of similar acts is automatically admissible." See *Benedetto,* supra, 571 F.2d at 1248. The Government, we emphasized, must do more than disclaim an intention of proving that the defendant is a bad man. For what prosecutor in his right mind will ever offer that improper justification? Instead, the prosecutor must show that the evidence is relevant, and there is no presumption that it is. See id.

---

**3.** The three plants covered by the indictment are located in Manhattan.

**4.** Late on the first day of deliberations, the jury reported it was hung. Moreover, based upon reports of raised voices, the judge cautioned the jury to lower their voices since screaming made no valuable contributions to the jury deliberations.

In the case before us, the Government argued to the trial judge that the evidence of other crimes should be admitted to prove "intent, plan, knowledge, and the absence of any mistake or accident." Despite defense counsel's protestation that there was no real issue on intent, the judge admitted the disputed testimony as relevant to defendant's intent and plan, and so advised the jury.[5] On this record, the former theory was incorrect. As we pointed out in *Benedetto,*

> Defendant did not claim that he took the money from the [three] companies named in the indictment innocently or mistakenly. He claimed that he did not take the money at all. Knowledge and intent, while technically at issue, were not really in dispute . . . .

Id. at 1249; see also *United States v. DeCicco,* 435 F.2d 478, 483–84 (2d Cir. 1970).[6] The Government apparently concedes as much in this court, since it has dropped this justification for the ruling.

Instead, the Government argues that the similar acts testimony was relevant to show (1) a common scheme or general plan, (2) a unique scheme and pattern, (3) identity, and also (4) to corroborate the testimony of the meat producers referred to in the indictment. As indicated above, the judge accepted only the first of these justifications in admitting the challenged testimony. A similar contention was left undecided in *Benedetto,* supra, 571 F.2d at 1249–50, and in *Gubelman,* supra, 571 F.2d at 1254, and we address it now.

The rubric of scheme or plan has been used to cover a multitude of particular situations, which do not fall into simple categories. Fed.R.Evid. 404(b) states that other crimes evidence "may . . . be admis-sible" for such purposes as "proof of . . . preparation, plan . . . ." and makes no attempt to distinguish between, for example, plans which are not unusual and those which may be fairly characterized as unique.[7] We put the latter to one side for the moment and concentrate only on what the Government calls a common scheme or plan. Even so limited, the concept applies to a myriad of factual patterns, which fall into two major areas. The first includes other crimes evidence demonstrating a connected or inseparable transaction. See 2 Weinstein's Evidence ¶ 404[09], at 404–57 to –59 (1977). According to McCormick, evidence introduced for this purpose is designed "[t]o complete the story of the crime on trial by proving its immediate context of happenings near in time and place." McCormick, Evidence § 190, at 448 (2d 1972). For instance, in *United States v. Howard,* 504 F.2d 1281, 1283–84 (8th Cir. 1974), forged drivers' licenses, which had been seized simultaneously with counterfeit Federal Reserve Notes, were properly admitted in a prosecution for selling and possessing counterfeit currency. Since the defendant had attempted to sell both counterfeit licenses and currency as part of the same transaction, the contemporaneously seized licenses were clearly relevant to "complete the story of the crime on trial. . . . ." See also I Wigmore on Evidence § 218 (3d ed. 1940).

The second subcategory of common plan involves similar act testimony constituting a continuing scheme or conspiracy. Cases in this group, which will sometimes overlap with the prior categorization, see, e. g., *United States v. Stadter,* 336 F.2d 326, 328–29 (2d Cir. 1964), cert. denied, 380 U.S. 945, 85 S.Ct. 1028, 13 L.Ed.2d 964 (1965), concern

---

5. In charging the jury at the end of the trial, the district judge also stated that the jury might consider the other crimes evidence as relevant to appellant's knowledge.

6. As Judge Cooper correctly charged the jury, the Government had to prove only that appellant knew he was taking money in connection with his official duties, regardless of the "purpose or intent with which the money was given and which it was accepted . . . ."

7. Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

similar acts evidence offered to show the existence of a definite project intended to facilitate completion of the crime in question. See 2 Weinstein's Evidence ¶ 404[09], at 404–59 to –61 (1977). Thus, in *United States v. Light*, 394 F.2d 908 (2d Cir. 1968), we held that the Government could prove the means used to disguise kickbacks generated by the securities fraud for which defendants had been indicted, even though the acts thus proved also constituted larceny and forgery.

We recognize that this brief explication of "common scheme or plan" neither defines the outer boundaries of this category of other crimes evidence nor provides rules of easy application. Moreover, the two lines of cases outlined above undoubtedly envelop many different circumstances. Nonetheless, we think that the similar acts introduced here are not justified by the rationale of common scheme or plan. Testimony that appellant took bribes at three plants in Brooklyn six months or a year before the payoffs in Manhattan plants, which were charged in the indictment, did not "complete the story of the crime on trial by proving its immediate context of happenings near in time or place." Similarly, the testimony was not sufficiently probative of a definite project directed toward completion of the crime in question. It was perhaps probative of appellant's habit or character, but not of the existence of a specific plan of which the charged acts were just a part. We thus conclude that the trial court erred in finding that the proffered

evidence was relevant to show appellant's common scheme or plan.[8]

The Government also justifies the other crimes evidence as relevant to show a unique pattern or plan, to establish O'Connor's identity, and to corroborate the main prosecution witnesses. These arguments were not made below, and there is force to appellant's contention that we should not retroactively approve the judge's ruling on the basis of theories he did not use, particularly since appellant specifically, albeit unsuccessfully, objected to the Government's justifications made at trial.[9] We need not consider this further, however, because we conclude that the evidence was not admissible under these additional theories. The similar acts here were not part of a unique scheme so unusual "as to earmark them as the handiwork of the accused." See McCormick, Evidence § 190, at 449 (2d ed. 1972). There is nothing unique about receiving bribes in cash each week without conversation or spectators. See *Benedetto,* supra, 571 F.2d at 1249. Moreover, for the purposes of other crimes evidence analysis, identity had not been placed in issue here, as it had been, for example, in *Gubelman,* supra, 471 F.2d at 1254–55. Before the judge admitted the evidence in this case, defendant's counsel had disclaimed any intention of pressing the identity issue, and had conducted his cross-examination accordingly. Such a tactic was well conceived since it was quite clear that one of the prosecution's main witnesses had known appellant for several years before he became a

---

**8.** Appellee cites two analogous cases, in which other circuits have upheld the introduction of other crimes evidence similar to that admitted here. However, in *United States v. Murphy*, 480 F.2d 256, 260 (1st Cir.), cert. denied, 414 U.S. 912, 94 S.Ct. 253, 38 L.Ed.2d 151 (1973), the First Circuit held only that there was no plain error in admitting evidence of other bribes in the prosecution of a corrupt meat inspector. In contrast, appellant here repeatedly raised objections to the proffered testimony. Nor are we persuaded by the Third Circuit's decision in *United States v. Laurelli*, 293 F.2d 830, 832 (3d Cir. 1961), summarily upholding the introduction of evidence of similar bribes accepted by the government inspector on trial. We agree with Judge Kalodner's

dissent in that case that such evidence was not sufficiently relevant to show intent, which as here was not in issue, or a plan.

**9.** The unfairness is highlighted by the fact that the judge's protective limiting instructions are seemingly rendered meaningless if the admission of the evidence is subsequently upheld on grounds other than those adopted by the trial judge. See *United States v. Rosenstein*, 474 F.2d 705, 711 (2d Cir. 1973); cf. *Benedetto,* supra, 571 F.2d at 1250 n. 9 (no plain error in failure to give limiting instructions; Government's after-the-fact justification clearly correct).

meat inspector.[10] Finally, while we have said that corroboration is a legitimate use of other crimes evidence, the corroboration must be "direct and the matter corroborated . . . significant." See *United States v. Williams,* supra, 577 F.2d at 192. The Government has failed to demonstrate how the challenged testimony corroborated any consequential testimony except insofar as it tended to show that appellant was a bad man likely to have committed the crimes charged in the indictment—a clearly impermissible use. See Fed.R.Evid. 404(b).

We therefore hold that the other crimes testimony should have been excluded. It was not relevant to a significant issue that was truly in dispute and was therefore inadmissible under Rule 404(b). Not only was the evidence irrelevant, it was prejudicial because it might lead a jury to convict because it thought the defendant's character was such that he frequently committed crimes.[11] Moreover, the evidence distorted the emphasis at trial away from the crimes covered by the indictment to those not so charged.[12] On these facts, the evidence should have been excluded. We do not suggest that evidence of other crimes cannot be used; our own precedents and Rule 404(b) are to the contrary. But caution and judgment are called for, and a trial judge faced with an other crimes evidence problem should require the Government to explain why the evidence is relevant and necessary.

### III

■ Since we are reversing the judgment of conviction, we briefly address further issues that may arise in a retrial. Appellant claims that the trial court erroneously limited his examination of certain witnesses. Thus, defense counsel sought to ask a defense witness, FBI agent Gentilcore, about O'Connor's specific good acts, as reflected in FBI reports of interviews with still other meat packers who stated that they had not paid appellant any bribes. The judge did not err in curtailing examination of Gentilcore or in excluding the reports in question. Defense counsel had already elicited in general terms from the witness the information now sought to be made more specific. Much more importantly, the evidence should have been excluded in the first instance. Even the meat packers themselves could not properly have testified, over objection, as to appellant's non-receipt of bribes in their plants, because such testimony would in effect be an attempt to demonstrate appellant's good character by proof of specific good acts. See *Benedetto,* supra, 571 F.2d at 1249–50.

■ Appellant also challenges the exclusion of a transcript of a tape-recorded conversation between Morris Kupferberg, one of the main Government witnesses, and an undercover agent posing as a meat inspector. The conversation apparently concerned a bribe given by Kupferberg to the agent-inspector, and the suggested relevance of this evidence was to impeach Kupferberg's credibility. Kupferberg testified that he had paid bribes to various meat inspectors, but that he could not remember the incident in question or whether he had ever paid that particular inspector. We have read the transcript, and the judge clearly had discretion to exclude this apparently forgotten conversation of little import, which was not directly inconsistent with Kupferberg's testimony.[13]

10. Appellant had worked for this witness' company for several years, and, in his capacity as union representative, had dealt with the witness repeatedly.

11. See I Wigmore on Evidence § 216, at 717 (3d ed. 1940):

[I]f [the facts of other crimes] are not . . . relevant, they are excluded for the double reason of irrelevancy . . . and impolicy . . . . .

12. From the number of transcript pages involved, it appears that the Government spent more time questioning its four other crimes witnesses than it did its three main witnesses.

13. We need not address appellant's arguments concerning the limits placed on cross-examination of one of the other crimes evidence witnesses.

Finally, challenge is made to the trial court's instructions to the jury in two respects. First, appellant argues that the judge should not have explained the legislative intent behind the Meat Inspection Act, 21 U.S.C. §§ 601 et seq., under which appellant was prosecuted. However, appellant does not dispute the accuracy of this portion of the charge, which was largely based upon Congress' explicit statement of legislative findings in section 602, and we see no abuse of discretion in so charging the jury. Similarly, we find no merit to the objection to the giving of two modified *Allen* charges, especially since the jury, which had reported that it was hung, continued to deliberate for several hours after the second charge was given. See *United States v. Robinson,* 560 F.2d 507, 517 (2d Cir. 1977) (en banc).

The judgment of conviction is reversed, and the case is remanded to the district court.