UNITED STATES of America, Appellee,

v.

Chaim LEVY, Defendant-Appellant.

Nos. 354, 420, Dockets 83–1226, 83–1227.

United States Court of Appeals,
Second Circuit.

Submitted Nov. 9, 1983.

Decided Jan. 31, 1984.

**998**

Ivan S. Fisher, Dorothy T. Zeman, Jonathan Diller, Law Clerk, New York City, for defendant-appellant.

Raymond J. Dearie, U.S. Atty., E.D.N.Y., Allyne R. Ross, Mark A. Summers, Asst. U.S. Attys., E.D.N.Y., Brooklyn, N.Y., for appellee.

Before MESKILL and PIERCE, Circuit Judges, and METZNER,* District Judge.

MESKILL, Circuit Judge:

This is an appeal from two judgments of conviction entered against Chaim Levy on June 8, 1983 in the United States District Court for the Eastern District of New York, Glasser, J. The first judgment, entered after a non-jury trial, was for possession with intent to distribute approximately ten ounces of heroin in violation of 21 U.S.C. § 841(a)(1) (1982). A second judgment, entered after a jury trial, was for the distribution of approximately one ounce of heroin in violation of 21 U.S.C. § 841(a)(1) (1982) and 18 U.S.C. § 2 (1982). Levy was sentenced to eight years imprisonment and a lifetime special parole for possession with intent to distribute and ten years imprisonment and a lifetime special parole term for distribution, the sentences to run concurrently.

In his appeal from the conviction for possession, Levy alleges that the district court erroneously denied his motion to suppress the heroin seized without a warrant in violation of the Fourth Amendment. He claims that the arrest itself was unlawful because the arresting Drug Enforcement Administration (DEA) agents had ample time to procure an arrest warrant but failed to do so.

Levy challenges his conviction for distribution of an ounce of heroin on two grounds. He claims that the district court improperly admitted evidence of "other acts" as defined by Fed.R.Evid. 404(b) (Rule 404(b))[1] that should have been ex-

---

* Honorable Charles M. Metzner, United States District Judge for the Southern District of New York, sitting by designation.

1. Fed.R.Evid. 404(b) provides:

*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for

cluded pursuant to Fed.R.Evid. 403 (Rule 403)[2] and that even with evidence of the "other act" before the jury, there was insufficient evidence to support his conviction.

We affirm Levy's conviction for possession with intent to distribute ten ounces of heroin. We reverse his conviction for the distribution of one ounce of heroin and remand to the district court for a new trial.

## 1. *Possession With Intent to Distribute*

### A. *Background*

An earlier DEA investigation of Chaim Levy became inactive when he was arrested in Israel on a passport violation. In early 1982, Special Agent James Kibble learned from several informants that Levy was trafficking in narcotics in the Brooklyn area and that he "dealt" from a gas station, usually on weekends when fewer police were around. The sources also stated that the narcotics were stored in a safe deposit box in an unidentified bank. DEA agents watched Levy's Brooklyn gas station and identified vehicles entering the premises as being registered to suspected narcotics dealers. In addition, the activities of the drivers of the vehicles and station personnel did not appear to be related to the purchase of petroleum products or mechanical repairs or maintenance. Levy was also seen conversing with known drug users.

On Monday, February 22, 1982, several DEA agents, including Agent Kibble, observed Levy hurriedly leaving the gas station and driving to a nearby branch of the Metropolitan Savings Bank. The bank closed before Levy's arrival and his attempts to enter were fruitless. The following morning bank authorities informed Kibble that Levy had access to two of their safe deposit boxes. On Friday, February 26, agents observed Levy entering the bank shortly before closing time and going to the safe deposit box area. Levy was wearing a heavy outer coat and nothing was seen protruding from his pockets. When Levy emerged from the bank, Agent Kibble noticed "a brown paper bag which was protruding from [Levy's] right pocket." Levy walked across the street where he was approached by Kibble and Special Agent Higgs. Kibble drew his weapon and held up his DEA shield. Levy reached for the bag and Kibble ordered him to "freeze" and raise his hands. Kibble then walked Levy to a wall, had him stand spread-eagle, patted him down for weapons and removed the protruding brown paper bag. Kibble opened the bag and saw a powdered substance packaged in plastic "baggies." Levy was informed that he was under arrest and advised of his constitutional rights. Laboratory analysis confirmed that the powder was heroin.

Levy conceded that the agents had probable cause to arrest him, but nevertheless moved to suppress the heroin on the grounds that (1) his arrest was unlawful because the agents failed to obtain an arrest warrant when they had ample opportunity to do so, and (2) he had been illegally searched without a search warrant. At a hearing on July 7, 1982, Judge Glasser denied the motion.

Levy then waived his right to a jury trial pursuant to Fed.R.Crim.P. 23(a). The parties stipulated to the facts as presented in the suppression hearing and the district court found Levy guilty as charged on November 26, 1982.

### B. *Discussion*

Levy claims that the district court erred by refusing to suppress the heroin seized from his person in violation of the Fourth Amendment because the search and seizure

---

other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**2.** Fed.R.Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially out-weighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

took place without a warrant. Levy asserts that the facts do not fit any exception to the Fourth Amendment search warrant requirement because it was neither a search incident to a valid arrest nor an investigative "stop and frisk." Levy also suggests that the agents' failure to procure an arrest warrant, despite ample time to do so, rendered the arrest and the search illegal. We reject both claims and agree with the district court that the heroin was admissible.

■ A search is presumed to be unreasonable and in violation of the Fourth Amendment unless a warrant is first secured. *Jones v. United States*, 357 U.S. 493, 497–99, 78 S.Ct. 1253, 1256–57, 2 L.Ed.2d 1514 (1958). However, the courts have identified some "jealously and carefully drawn" exceptions to the warrant requirement. *Id.* at 499, 78 S.Ct. at 1257. Such an exception is a search incident to a valid arrest. *Id.* The exception exists to allow an arresting officer to "disarm the suspect in order to take him into custody ... [and] to preserve evidence on [the suspect's] person for later use at trial." *United States v. Robinson*, 414 U.S. 218, 234, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973). "It is the fact of the lawful arrest which establishes the authority to search," and such a search is a "reasonable" search under the Fourth Amendment. *Id.* at 235, 94 S.Ct. at 477.

■ To qualify as an exception, the arrest giving rise to the search must be valid. *Id.* at 234, 94 S.Ct. at 476. To make a public arrest valid for purposes of the Fourth Amendment, the arresting officer must have probable cause. *Wong Sun v. United States*, 371 U.S. 471, 479, 83 S.Ct. 407, 412, 9 L.Ed.2d 441 (1963). A DEA agent must meet the same probable cause standard as any other arresting officer in making a constitutionally valid warrantless arrest. *See Henry v. United States*, 361 U.S. 98, 100, 80 S.Ct. 168, 170, 4 L.Ed.2d 134 (1959) (FBI agents' statutory authority to arrest upon "reasonable grounds" to believe felony committed states the constitutional standard of probable cause); *United*

ed *States v. Shyvers*, 385 F.2d 837 (2d Cir.1967) (narcotics agent's arrest on probable cause found valid and evidence seized therein found admissible), *cert. denied*, 390 U.S. 998, 88 S.Ct. 1203, 20 L.Ed.2d 98 (1968). Levy has conceded that probable cause existed at the time of the search and arrest. Therefore, his arrest was valid.

As incident to the valid arrest, the DEA agents could search Levy for weapons or evidence. *Carroll v. United States*, 267 U.S. 132, 158, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925); *Weeks v. United States*, 232 U.S. 383, 392, 34 S.Ct. 341, 344, 58 L.Ed. 652 (1914). Levy claims, however, that the search was not incident to the arrest because it preceded the arrest and the arrest would not have occurred if the search had not revealed the presence of narcotics. Therefore, according to Levy, the heroin seized in the search should have been excluded under *Sibron v. New York*, 392 U.S. 40, 63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968). We disagree.

■ The district court found that Levy had already been arrested at the time of the search. Before Agent Kibble searched Levy, he approached Levy with his weapon drawn, showed Levy his DEA shield, ordered Levy to "freeze" and forced Levy to stand spread-eagle against a wall. Precisely when an arrest occurs depends on the facts of the particular case. *United States v. Richards*, 500 F.2d 1025, 1028 (9th Cir. 1974), *cert. denied*, 420 U.S. 924, 95 S.Ct. 1118, 43 L.Ed.2d 393 (1975). An arrest may occur even if the formal words of arrest have not yet been spoken if a person is restrained and his freedom of movement is restricted. *See Henry v. United States*, 361 U.S. 98, 102–03, 80 S.Ct. 168, 171–72, 4 L.Ed.2d 134 (1959); *United States v. Skinner*, 412 F.2d 98, 103 (8th Cir.), *cert. denied*, 396 U.S. 967, 90 S.Ct. 448, 24 L.Ed.2d 433 (1969); *United States ex rel. Walls v. Mancusi*, 406 F.2d 505, 508–09 (2d Cir.), *cert. denied*, 395 U.S. 958, 89 S.Ct. 2099, 23 L.Ed.2d 745 (1969). Without question, Levy was restrained and his freedom of movement was restricted before Agent Kibble removed the bag from his pocket.

Therefore, the district court's finding that arrest preceded the search is not clearly erroneous.

■ Appellant next argues that an arresting officer is constitutionally required to procure an arrest warrant if there is ample time to do so. This argument has been rejected by the Supreme Court, *United States v. Watson,* 423 U.S. 411, 423, 96 S.Ct. 820, 827, 46 L.Ed.2d 598 (1976). While a warrant may be preferable, it is not a constitutional requirement. *See United States v. Rollins,* 522 F.2d 160, 167 (2d Cir.1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976); *United States ex rel. LaBelle v. LaVallee,* 517 F.2d 750, 754–55 (2d Cir.1975), *cert. denied,* 423 U.S. 1062, 96 S.Ct. 803, 46 L.Ed.2d 655 (1976); *United States v. Fernandez,* 480 F.2d 726, 740 n. 20 (2d Cir. 1973). Thus, the seizure of the heroin was incident to a valid arrest and was admissible against Levy.

### 2. *Distribution Conviction*

#### A. *Background*

Levy's arrest for distribution of heroin stemmed from the investigation of the narcotic trafficking activities of Avi Elimalich. Agent Kibble began an investigation of Elimalich in October 1982 and utilized the assistance of two informants, Dilson and Sammy Assraf. Assraf introduced Elimalich to Dilson, who informed Elimalich that he wished to buy some heroin. Elimalich agreed to provide a sample worth $250 for which Dilson would pay later. At a subsequent meeting, Dilson paid for the sample and requested better quality heroin. Elimalich replied that he still had twelve ounces of heroin to sell but that he and his partner were expecting better quality narcotics shortly.

A second meeting at a diner was arranged. Agents at the scene observed a car driven by Elimalich with Levy as a passenger pulling into a gas station down the street from the diner. Elimalich left the car and began to walk towards the

diner. Levy drove down the street behind Elimalich, turned the car around, and parked across from the diner. Levy sat slumped down in the driver's seat while Elimalich and Dilson discussed narcotics in front of the diner. Elimalich then left the diner and walked back to the gas station. Levy followed in the car. At the gas station Elimalich entered the car and they drove away. Later that evening, both Elimalich and Levy were seen leaving Levy's residence.

On November 2, 1982, Levy and Elimalich picked up Assraf and left him with Dilson at a restaurant in Manhattan. Dilson and Assraf then proceeded to Brooklyn and met with Elimalich in front of a restaurant at approximately 7:00 p.m. Levy, who appeared nervous, was observed standing near the restaurant doorway but did not participate in the conversation or activities of the other three men. Elimalich, Dilson and Assraf entered Elimalich's car and drove off. Several blocks away from the restaurant, Elimalich sold Dilson approximately one ounce of heroin for $4,500. A later analysis of the one ounce of heroin and the previously supplied sample indicated that the heroin had been cut with procaine. Elimalich and Levy were later arrested for their involvement in this transaction.[3]

At Levy's trial, the government sought to introduce evidence of a prior narcotics transaction between Elimalich and Levy and Simon Assraf, Sammy Assraf's brother. Simon Assraf, following the instructions of Agent Kibble, contacted Levy in early October in an attempt to purchase some heroin. At a meeting in Simon's store, Levy, accompanied by Elimalich, informed Simon that a sample of heroin would soon be available. On November 2 at approximately 1:00 p.m., the same day as the Elimalich/Dilson transaction, Levy and Elimalich, in Levy's car, picked up Simon. During a short drive around the area, Levy gave Simon a heroin sample, quoted a price of $4,500 an ounce, and indicated that he could purchase one to two

---

**3.** Elimalich pleaded guilty to the charge of possession of heroin with intent to distribute.

ounces. A subsequent analysis of the sample indicated that the heroin had also been cut with procaine. Neither Elimalich nor Levy were charged in relation to the transaction with Simon Assraf (sample transaction).

The defense objected to the testimony of Simon Assraf and others concerning the sample transaction, claiming that such evidence constituted evidence of "other acts," the admissibility of which is governed by Rule 404(b). This Rule requires that the purpose for admitting the evidence must be other than to show a propensity to commit a crime. If admissible under Rule 404(b), Rule 403 requires a determination that the probative value of the evidence outweighs its prejudicial impact. The prosecution countered that the evidence of the sample showed a "common scheme or plan" and was therefore admissible as an exception under Rule 404(b). The district court, however, determined that the sample transaction was not "extrinsic to. the acts for which the defendants were indicted," because the evidence of the sample transaction and the evidence of the crime were inextricably interwoven. Therefore, the court found that Rules 404(b) and 403 were not implicated. The court admitted the evidence without considering the purpose for which the evidence was being offered, without balancing the evidence's prejudicial impact against its probative value, and without giving the jury a requested limiting instruction on the use of the evidence in its determination.

Appellant challenges the court's determination and the admission of the evidence. We agree with appellant that the district court erred in determining that Rule 404(b) was not implicated and hold that evidence of the sample transaction constituted "other act" evidence as defined by the Rule and that if the evidence qualified for admission under one of the exceptions under the Rule, then the balancing provisions of Rule 403 should have been used to determine if the evidence should have been excluded, and, if properly admitted, the requested limiting instruction should have been given.

Rule 404(b) allows the introduction of other acts and crimes to prove things other than defendant's criminal propensity. Rule 404(b)'s non-exhaustive list of purposes for which other act or crime evidence may be admitted include proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. We have adopted the inclusionary or positive approach to the Rule; as long as the evidence is not offered to prove propensity, it is admissible. *United States v. O'Connor*, 580 F.2d 38, 40 (2d Cir.1978). The government, however, must explain in detail the purposes for which the evidence is sought to be admitted. *Id.* When the court has determined that the evidence is admissible under Rule 404(b), it must then balance the probative value of the evidence against its prejudicial impact to determine if the evidence is excludable under Rule 403. *United States v. Benedetto*, 571 F.2d 1246, 1248 (2d Cir.1978). As a final protection against unfair prejudice to the defendant, the court, upon request, must instruct the jury that it must only use the evidence of other acts for the purposes for which it was offered and not as an indication of criminal propensity. Fed.R. Evid. 105.

Courts and commentators have struggled with the question of when an act or crime is an "other" act or crime as defined by Rule 404(b). *See* 22 C. Wright & K. Graham, Federal Practice and Procedure, § 5239, at 445–49 (1978). When the acts or crimes sought to be introduced occurred contemporaneously with the indicted crime, some commentators argue that such contemporaneous crimes or acts are outside of the scope of Rule 404(b) because such crimes or acts are so interwoven with the indicted crime that it would be impossible to prove one without revealing the other. Commentators have suggested that the admission of evidence of contemporaneous crimes appears not to substantially prejudice the defendant. They argue that the other crime or act arises from the same transaction as the indicted crime and the evidence of the "interwoven" crime is obvi-

ously not offered solely to prove the defendant's criminal propensity. *See* 22 C. Wright & K. Graham, Federal Practice and Procedure, § 5239, at 448 (1978).

Some courts have extended this inextricably interwoven concept to allow admission of the evidence of crimes or acts occurring prior to or subsequent to the indicted crime. The district court cites several of the cases to support its analysis. In *United States v. Aleman*, 592 F.2d 881 (5th Cir.1979), the defendant had been indicted for possession and distribution of heroin. The defendant admitted his involvement in heroin trafficking during negotiations for the sale of an ounce of cocaine. The court held that the evidence of the cocaine transaction was admissible because it would have been confusing to have testimony on the admissions without a description of the circumstances surrounding the conversation.[4] In *United States v. Torres*, 685 F.2d 921 (5th Cir.1982), the Fifth Circuit also allowed the admission of evidence of a sample transaction between DEA agents and defendants that had preceded the larger purchase for which defendants were indicted. Because the plans for the larger transaction had been laid at the time of the sample transaction, the Fifth Circuit ruled that the sample transaction did not constitute " 'other acts' of the type contemplated by Rule 404(b)." 685 F.2d at 924. The Eleventh Circuit adopted the Fifth Circuit's approach in *United States v. Costa*, 691 F.2d 1358 (11th Cir.1982), where an informant sought to testify about a chain of drug dealings with the defendant that had preceded and led to the sale for which the defendant was indicted. The court upheld the admission of the testimony because "it formed an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." 691 F.2d at 1361.

Other circuits have included evidence of inextricably interwoven crimes or acts within the scope of Rule 404(b) and have

determined the admissibility of the evidence as an exception to Rule 404(b) and under the balancing provisions of Rule 403. The First Circuit in *United States v. D'Alora*, 585 F.2d 16 (1st Cir.1978), applied Rules 404(b) and 403 to evaluate the admissibility of marked money, paid to a co-defendant in a previous drug transaction, found on the defendant's person during an arrest for a later drug transaction. The court determined that the evidence was necessary "to complete the story of the crime," *id.* at 20 (quoting 2 J. Weinstein & M. Berger, Weinstein's Evidence, § 404[09] at 404–57 (1975)), found its probative value outweighed its prejudicial impact and ruled in favor of its admission. In *United States v. Masters*, 622 F.2d 83 (4th Cir.1980), the evidence sought to be admitted was the defendant's descriptions of his other crimes taped during negotiations for illegal gun sales. The Fourth Circuit found the evidence admissible under Rules 404(b) and 403 because the "uncharged offense [was] 'so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other ....' " *Id.* at 86 (quoting *United States v. Beechum*, 582 F.2d 898, 912 n. 15 (5th Cir.1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979)).

■ The fact that evidence of the sample transaction with Simon Assraf was closely connected with the Elimalich/Dilson transaction did not obviate the need to assess evidence of the sample transaction under Rules 404(b) and 403. The sample and the one ounce transactions occurred at different locations, at different times and with different people. The argument that an act with these distinctions from the charged offense is not "other" for the purposes of Rule 404(b) is not persuasive.

We are not confronted with a separate criminal offense occurring during the very commission of the charged offense, as might arise if a defendant assaulted a bank customer in the course of committing a

---

**4.** In *Aleman,* the Fifth Circuit also discussed the admissibility of the evidence under Rules 404(b) and 403. 592 F.2d at 885–86.

bank robbery. Acts occurring during the commission of a charged offense and related to it may well be so inextricably related to the charged offense that they cannot realistically be considered "other" acts within the meaning of Rule 404(b). But it is not inconceivable that acts or crimes that occur almost contemporaneously with the indicted crime may be entirely unrelated to that crime. To allow the admission of evidence of crimes or acts unrelated to the charged offense presents the precise threat of prejudice that Rule 404(b) was designed to eliminate. And the same risk of prejudice might arise from the admission of evidence of crimes or acts related to the charged offense but, as in this case, occurring at different times, different places and with different people. The defendant would necessarily have to defend against crimes or acts not named in the indictment or not arising from the same transactions giving rise to the crimes named in the indictment. The jury might base its decision, not on the defendant's guilt of the charged crime, but on the defendant's tendency to commit crime. Because the danger of misuse or misapplication of evidence of acts related to the charged crime might be as great as that of unrelated crimes or acts, evaluation of the evidence's admissibility under Rule 404(b) is necessary to minimize prejudice to the defendant.

This view is consistent with our holding in *United States v. O'Connor*, 580 F.2d 38 (2d Cir.1978), where we broadly defined the "plan" exception in Rule 404(b) to include two subcategories. The first was "evidence introduced ... '[t]o complete the story of the crime on trial by proving its immediate context of happenings near in time and place.'" *Id.* at 41 (quoting McCormick, Evidence § 190, at 448 (2d ed. 1972)). We also included under the rubric of the plan exception "evidence offered to show the existence of a definite project intended to facilitate completion of the crime in question." 580 F.2d at 41–42. The acts and crimes included in the broad definition of plan in *O'Connor* would include those crimes or acts that other courts have defined as inextricably interwoven

with the charged crime and attempted to place outside the scope of Rule 404(b). *See, e.g., United States v. McCrary*, 699 F.2d 1308 (11th Cir.1983); *United States v. Costa*, 691 F.2d 1358 (11th Cir.1982); *United States v. Torres*, 685 F.2d 921 (5th Cir. 1982); *United States v. Aleman*, 592 F.2d 881 (5th Cir.1979); *United States v. Bloom*, 538 F.2d 704 (5th Cir.1976), *cert. denied*, 429 U.S. 1074, 97 S.Ct. 814, 50 L.Ed.2d 792 (1977).

We hold that the evidence of the sample transaction with Simon Assraf was evidence of an "other act" as defined in Rule 404(b). The district court thus erred in admitting the evidence without considering the prosecution's explanation of its admissibility as an exception to Rule 404(b), without balancing the prejudicial impact of the evidence against its probative value under Rule 403 and without giving the jury a requested limiting instruction on the use of the evidence in its deliberations. We cannot conclude that the error was harmless. The government, for whatever reason, chose not to prosecute Levy for the sample transaction even though it was a separate offense occurring six hours prior to the offense charged. Evidence of the sample transaction certainly prejudiced Levy. As an "other" act, evidence of it would clearly have been admissible to show a common scheme or plan under Rule 404(b) unless excludable under Rule 403. However, Levy was not given the benefit of this determination. Even if the evidence was found admissible, Levy would have been entitled to a requested cautionary jury instruction that the evidence could only be considered for the purpose offered, namely, to show a common scheme or plan and not as an indication of Levy's criminal propensity. Fed.R.Evid. 105. Given the paucity of the evidence supporting the conviction, the danger is too great that Levy "might [have been] convicted because of his participation in the [sample transaction] rather than because he [was] guilty beyond a reasonable doubt of the crime alleged." *United States v. Manafzadeh*, 592 F.2d 81, 86 (2d Cir.1979).

We affirm the judgment of conviction for possession with intent to distribute approximately ten ounces of heroin in violation of 21 U.S.C. § 841(a)(1) (1982).

We reverse the judgment of conviction for the distribution of one ounce of heroin in violation of 21 U.S.C. § 841(a)(1) (1982) and 18 U.S.C. § 2 (1982) and remand to the district court for a new trial.