**UNITED STATES of America**

v.

**Pasquale G. BARONE.**

**Cr. No. 89–289–WF.**

United States District Court,
D. Massachusetts.

Jan. 25, 1994.

Gregg L. Sullivan, Jeffrey Auerhahn, U.S. Attys., Office of the U.S. Atty., Boston, MA, for U.S.

Bernard M. Grossberg, Richard M. Egbert, Boston, MA, for Barone.

## MEMORANDUM AND ORDER

WOLF, District Judge.

The court has carefully considered the defendant Pasquale G. Barone's motion for a new trial, which the government opposes. For the reasons described below, the motion is denied.

### I. The Two Modified Allen Charges

■ The defendant's motion for a new trial does not expressly rely on the court's decision to give the jury a second modified Allen charge after it reported it was deadlocked on October 26, 1993. The court has, however, considered whether the defendant is entitled to a new trial on this basis and has determined that he is not.

The jury began its deliberations on the afternoon of October 20, 1993, after a nine week trial involving, among other things, charges that the defendant committed murders on behalf of the Mafia. The first several days of deliberations were each relatively brief and substantially interrupted by questions which required considerable time for the formulation of appropriate responses. *See e.g.,* October 21, 1993 Transcript ("Tr.") at 1–47. The jury was not sequestered, was excused as it requested at about 4:00 p.m. each day, and, as it requested, was not required to deliberate on Saturday or Sunday.

On Monday, October 25, 1993, the jury reported it had "reached an impasse" and asked whether there was "any guidance [the court could] give us to help us with our deliberations." October 25, 1993 Tr. at 5. The defendant did not move for a mistrial. After consulting counsel, the court gave a modified Allen charge in the form approved by the Court of Appeals for the First Circuit. *Id.* at 11–13; *see United States v. Nichols,* 820 F.2d 508, 511 (1st Cir.1987); *United*

*States v. Angiulo,* 485 F.2d 37, 39 (1st Cir. 1973).[1] This instruction emphasized, among other things, that no juror should give up his or her honest beliefs solely for the sake of reaching a unanimous verdict and that if the jurors made their best efforts to reach a unanimous verdict, but did not succeed, they had a right to fail to agree. October 25, 1993 Tr. at 11–13. At 3:15 p.m. the jury reported that there was no change in its deliberations and asked to return the next morning. *Id.* at 16.

On October 26, 1993, the jury deliberated until about 3:00 p.m. when it reported it had made no progress in its deliberations and saw no potential for reaching a unanimous verdict on any of the four counts through continued rational discussion. October 26, 1993 Tr. at 8. The defendant expressed the view that giving the jury another modified Allen charge was not impermissible in the First Circuit as a matter of law, *id.* at 9–10, but moved for a mistrial based upon the circumstances of this case, *id.* at 8–10. The motion was denied, *id.* at 12, and the jury was excused until the next day.

On October 27, 1993, the jury was again given a modified Allen charge which reiterated, among other things, that no juror should abandon his or her conscientious beliefs for the sake of reaching a unanimous verdict and that the jury had a right to fail to agree. October 27, 1993 Tr. 17–19. No objection was made to the form of the instruction.

The jury continued its deliberations until lunch time. Deliberations were then interrupted until the afternoon of October 28, 1993 because of the issue relating to Juror Douglas P. Berger, discussed below, which arose at lunch.

The court continues to believe that it had the discretion to give a second modified Allen charge and exercised this discretion appropriately. The propriety of any "Allen-type charge depends on whether it tends to coerce

1. The defendant, however, objected that the court's concluding statement, that "[w]e will await your further communication and, hopefully, your verdict," was coercive. The court, however, again finds when viewed in the context of the complete instructions, the comment was not coercive. October 25, 1993 Tr. at 3–16. This

view is reinforced by the length of the deliberations which followed the instruction. *United States v. O'Connor,* 580 F.2d 38, 44 (2d Cir. 1978), *United States v. Robinson,* 560 F.2d 507, 517 (2d Cir.1977) (en banc), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978).

undecided jurors into reaching a verdict by abandoning without reason conscientiously held doubts." *United States v. Robinson,* 560 F.2d 507, 517 (2d Cir.1977) (en banc), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978). In deciding whether a second modified Allen charge is permissible and appropriate, an individualized determination of coercion is required. *Id.* (affirming decision to give second modified Allen charge); *United States v. Ruggiero,* 928 F.2d 1289, 1299–1300 (2d Cir.) *cert. denied, Gotti v. United States,* —— U.S. ——, 112 S.Ct. 372, 116 L.Ed.2d 324 (1991) (same); *United States v. O'Connor,* 580 F.2d 38, 44 (2d Cir. 1978) (same); *United States v. Reed,* 686 F.2d 651, 653 (8th Cir.1982) (same); *but see United States v. Seawell,* 550 F.2d 1159, 1163 (9th Cir.1977) (holding second modified Allen charge coercive *per se* unless jury requests it).

In the present case, the second modified Allen charge was not coercive. The jurors were expressly reminded not to abandon their conscientious convictions in order to reach a unanimous verdict. *See Robinson,* 560 F.2d at 517; *Ruggiero,* 928 F.2d at 1299. They were not pressured by being sequestered or required to deliberate in the evening or over a weekend. Perhaps most significantly, after the second modified Allen charge the jury deliberated for a full morning without reaching a verdict before the Berger issue arose, and deliberated further for a day and a half after he was excused before reaching a unanimous verdict on three of the four counts. *See O'Connor,* 580 F.2d at 44 (jury deliberated several hours after the second charge); *Robinson,* 560 F.2d at 517 (jury deliberated for more than four hours after second charge). Therefore, viewing the totality of the circumstances, the court continues to believe that the second modified Allen charge was permissible and appropriate, rather than coercive. Thus, the second modified Allen charge does not constitute a valid basis for granting a new trial.

## II. *Excusing Juror Berger*

■ On the afternoon of October 27, 1993, the court learned that a Court Security Officer ("CSO") had told one of the jurors, Doug-las P. Berger, that Berger's cousin, John "Red" Shea, had been represented by Barone's attorney, Richard Egbert, Esq. October 27, 1993 Tr. at 20. The defendant again moved for a mistrial. *Id.* at 37. The court decided, however, to question Mr. Berger and other jurors before deciding whether to grant a mistrial.

The court repeatedly admonished Mr. Berger not to reveal in his responses how he was voting, or how the jury was divided. *See e.g., id.* at 75–76; October 28, 1993 Tr. at 15, 25–26. The court then questioned Mr. Berger to determine whether he could disregard the information he had been provided by the CSO, and continue to deliberate and vote based solely on the evidence and the applicable law. October 27, 1993 Tr. at 77–78; October 28, 1993 Tr. at 15–16, 25–26.

Mr. Berger said that he felt he could continue to deliberate based solely on the evidence and the applicable law, but expressed concern that he would be accused of impropriety if there was a hung jury or a not guilty verdict. October 27, 1993 Tr. at 77–78. He characterized that possibility as "something I don't want to deal with." *Id.* The court expressed doubts about whether Mr. Berger's remarks had been completely candid or credible, *id.* at 88, and deferred deciding how to proceed until the next day. *Id.* at 89.

On October 28, 1993, the court initially expressed the view that Mr. Berger's ability to deliberate properly had been impaired and that he ought to be excused. October 28, 1993 Tr. at 2–3. The defendant stated that if the court did not grant a mistrial, Mr. Berger should not be excused. *Id.* at 4–5. The court decided to question Berger again. *Id.* at 6.

While initially reiterating the opinion that he could participate properly in deliberations, Mr. Berger indicated that he wished to be excused. *Id.* at 17. More specifically, he said: "I wouldn't object [to being excused] ... I really don't feel I should be here anymore ... I don't think its right that I stay." *Id.* When asked again for his "most candid responses" as to whether he could avoid being influenced in what he said or how he voted by concerns about how it might look

later, Mr. Berger responded: "I don't know if I can really do that and that concerns me. It concerns me a lot. Maybe it shouldn't, but it does." *Id.* at 26.[2]

Having had the opportunity to listen to Mr. Berger over two days and to make assessments based in part upon his demeanor, the court concluded that Mr. Berger would be influenced in his performance as a juror by the information he had received from the CSO, and that there was, therefore, just cause to excuse him from the jury. October 28, 1993 Tr. at 30–31. Accordingly, Mr. Berger was excused pursuant to Fed.R.Crim.P. 23(b).

The court continues to believe that excusing Mr. Berger was a permissible and appropriate exercise of its discretion. When, as here, "the court finds that a communication between jurors and a third party has occurred, it must determine whether or not it was prejudicial and develop a record that affords 'an adequate basis for review.'" *United States v. Almonte,* 594 F.2d 261, 266 (1st Cir.1979). The procedure followed by the court in questioning Mr. Berger and other jurors was guided by the Court of Appeals for the First Circuit decision in *United States v. Angiulo,* 897 F.2d 1169, 1183–84 (1st Cir.), *cert. denied,* 498 U.S. 845, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990).

Generally, a trial court has "wide discretion" in deciding whether to remove a juror. *United States v. Sears,* 663 F.2d 896, 900 (9th Cir.1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982); *see also Angiulo,* 897 F.2d at 1185–86. Deliberating jurors may properly be removed if they are exposed to information relating to the case which has not been admitted into evidence and the court determines that their impartiality has, as a result, been impaired. *Ruggiero,* 928 F.2d at 1300–1302; *United States v. Gambino,* 788 F.2d 938, 947 (3rd Cir.), *cert. denied,* 479 U.S. 825, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986); *United States v. Eg-*

*buniwe,* 969 F.2d 757, 760 (9th Cir.1992). The court need not accept the juror's view of whether he remains impartial or accommodate his preference as to whether he wishes to continue to participate in deliberations. *Egbuniwe,* 969 F.2d at 761. Rather, the trial judge must make an independent assessment of a juror's ability to render a fair and impartial verdict. *See also, id.* at 762 ("The Supreme Court has recognized that the 'determination of impartiality, in which demeanor plays such an important part, is particularly within the province of the trial judge.' *Ristaino v. Ross,* 424 U.S. 589, 595 [96 S.Ct. 1017, 1020, 47 L.Ed.2d 258] (1976)"); *Ruggiero,* 928 F.2d at 1300 (affirming trial judge's decision that juror was disabled by fear because it was "based in large measure upon personal observations that cannot be captured on a paper record.").

In the present case, the court excused Mr. Berger because it was persuaded that his impartiality had actually been impaired. Upon further reflection, the court continues to find that this decision was most appropriate in the circumstances.

### III. *Denial of the Motion for a Mistrial*

#### A. *Berger's Excusal Alone Did Not Justify A Mistrial*

The court did not grant defendant's motion for a mistrial simply because Mr. Berger had been excused. In declining to do so, the court was aware that a defendant has a right to a unanimous verdict, *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), and that "a court may not dismiss a juror during deliberations if the request for discharge stems from doubts the juror harbors about the sufficiency of the government's evidence," *United States v. Brown,* 823 F.2d 591, 596 (D.C.Cir.1987); *see also United States v. Hernandez,* 862 F.2d 17, 23 (2d Cir.1988), *cert. denied,* 489 U.S. 1032, 109 S.Ct. 1170, 103 L.Ed.2d 228 (1989).

**2.** Defense counsel did not at trial object to the substance of the court's questions to Mr. Berger or to the manner in which they were asked. Indeed, defense counsel subsequently requested that the remaining jurors be questioned "in the same kind of open fashion that was done with Mr. Berger." October 28, 1993 Tr. at 33. Thus,

defense counsel's present claim that "only the improper and persistent questioning by the court finally produced equivocation by the juror," is not only unfounded, it is also surprising. Defendant's Memorandum in Support of Motion for New Trial at 24.

In the present case, the issue of Mr. Berger's excusal was not raised because of his view of the evidence. Rather, it was generated by his receipt of extra-judicial information which actually impaired his ability to continue to deliberate as an impartial juror. As described earlier, the court repeatedly instructed Mr. Berger not to disclose how he was voting. The court did not construe any remark by Mr. Berger as a statement of how he was voting and certainly did not consider which party he might have been supporting in deciding whether to excuse him.

The court's decision not to grant a mistrial after deciding that it was necessary to excuse Mr. Berger is consistent with the decision of the Court of Appeals for the Ninth Circuit in *Egbuniwe*. In *Egbuniwe*, a deliberating jury declared itself deadlocked. 969 F.2d at 758. While deliberations continued, a juror was informed that his girlfriend had been "roughed up" by the police in the course of her arrest. *Id.* Although the juror claimed he could continue to deliberate impartially, the court disagreed. *Id.* at ·759–60. Over the defendant's objection, the juror was excused. *Id.* The jury's deliberations continued with 11 jurors for two and a half days. *Id.* at 760. The defendant was convicted and the Court of Appeals affirmed. *Id.*

More significantly, the court's decision in this case is supported by the ruling and reasoning of the Court of Appeals for the Second Circuit in the strikingly similar *Ruggiero* case. In *Ruggiero*, on the sixth day of jury deliberations, the court gave an Allen charge in response to the jury's request for guidance. 928 F.2d at 1293. The court later gave a second, unsolicited Allen charge over the defendant's objection. *Id.* at 1294.

The court subsequently learned from a jury note that due to the fears of one juror arising from a perceived threat, the jury was unable to reach a unanimous verdict. *Id.* at 1295. After questioning the juror, the court determined ·that his impartiality was impaired. *Id.* at 1295–1296. The government moved to have the juror excused. *Id.* at 1296. The defendant objected and moved for a mistrial. *Id.* The court excused the juror and had the 11 remaining jurors continue their deliberations. *Id.* at 1297.

The fact that the excused juror had been the sole obstacle to a unanimous verdict was confirmed when the jury reported 10 minutes after resuming deliberations without him that it had reached a verdict. *Id.* at 1297. The court asked the jury to deliberate further without regard to anything the excused juror may have·said and accepted its verdict three hours later. *Id.* at 1298.

The Court of Appeals found that it was "clear at least with the aid of hindsight that the single juror who was holding out against a guilty verdict was [the juror] who was ultimately dismissed before the jury returned its verdict." *Id.* at 1299. Indeed, as indicated earlier, this was evident to the trial judge, from .the jury's note, before he excused the juror. *Id.* at 1295, 1299. The Court of Appeals found that the trial court did not abuse its discretion in finding the juror was disabled from continuing to participate in the jury deliberations. *Id.* at 1299. The Court of Appeals then affirmed the defendants' convictions because there was a proper basis for removing the juror, despite the fact that it was evident at the time he was excused that the juror was the impediment to the rendering of a unanimous verdict. *Id. Hernandez* was deemed distinguishable because in that case the Court of Appeals "could 'not be confident that [a removed juror's] disagreement with his colleagues was not the cause of his removal.'" *Id.* at 1302 (quoting *Hernandez*, 862· F.2d at 23).

In the present case, as in *Ruggiero*, there was a proper basis for excusing the deliberating juror. Mr. Berger was not excused, in whole or in part, because the court perceived that he was the cause of the jury's impasse. In contrast to *Ruggiero*, it was not clear at the time, or at present, that Mr. Berger was the impediment to defendant's conviction. To the contrary, the jury deliberated for a day and a half after he was excused before returning a unanimous verdict on only three of four counts, thus demonstrating at least that Mr. Berger was not the sole juror favoring the defendant. Accordingly, if the convictions in *Ruggiero* were properly affirmed, the defendant in the present case is not

entitled to a new trial because of the excusal of Mr. Berger.[3]

The court recognizes, however, that some of Mr. Berger's responses arguably indicate the possibility that he was not persuaded that the defendant had been proven guilty. On October 27, 1993, Mr. Berger said:

> It's just that things I'd have problems with if the jury, say, is hung and someone thinks that I had something to do with it. I don't want someone to be pointing a finger at me and saying, well, you know, he defended your cousin and you were going with him....

October 27, 1993 Tr. at 77. The next day, Mr. Berger said:

> I don't feel right.... I don't want anybody, whether it be someone in the general public finding out, or anybody up in the jury. I don't want to be looked at as, well, you know, he had a reason. I don't want anyone to think how I vote, I have a reason to do it other than the evidence presented in court.

October 28, 1993 Tr. at 16.

In *Brown*, the District of Columbia Court of Appeals stated broadly that the option of completing deliberations with 11 jurors under "Rule 23(b) is not available when the record evidence discloses a possibility that the [excused] juror believes that the government has failed to present sufficient evidence to support a conviction." 823 F.2d at 597. This statement of the law is inconsistent with the view of the Court of Appeals for the Second Circuit expressed in *Ruggiero*, as it is evident that the excused juror in *Ruggiero* had been the sole obstacle to the rendering of a unanimous verdict.

As indicated earlier, the present case is factually distinguishable from *Brown* and *Hernandez* because here the juror was excusable, and excused, for a valid reason. In any event, it is uncertain whether the Court of Appeals for the First Circuit would agree with defendant's contention that Mr. Berger's remarks indicate he was, definitely or possibly, voting not guilty. Similarly, it is not clear, in the context of this case, that the Court of Appeals for the First Circuit would state the applicable law as broadly as the District of Columbia Court of Appeals did in *Brown*, and thus reject the reasoning of the Court of Appeals for the Second Circuit in *Ruggiero*. Recognizing that this may be a question on which reasonable judges may differ, this court believes that it is necessary, and most appropriate, that the Court of Appeals for the First Circuit decide whether the defendant is entitled to a new trial because Mr. Berger was excused.[4]

**B. Deliberations Properly Continued with 11 Jurors**

■ When the court excused Mr. Berger for just cause, it had the discretion to declare a mistrial or continue the deliberations with 11 jurors. Rule 23(b) states that: "if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors." The court did not, however, have the discretion to add one of the alternates to the jury. *See United States v. Armijo*, 834 F.2d 132, 134–35 (2d Cir.), *cert. denied*, 485 U.S. 990 and 485 U.S. 991, 108 S.Ct. 1297, 99 L.Ed.2d 507 (1988); *Gambino*, 788 F.2d at 948–949; *United States v. Stratton*, 779 F.2d 820, 831 (2d Cir.1985), *cert. denied*, 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726 and 477 U.S. 906, 106 S.Ct. 3277, 91 L.Ed.2d 567 (1986); *United States v. Ga-*

---

**3.** In contrast to *Ruggiero*, the court in the present case did not instruct the jury to begin its deliberations again after Mr. Berger was excused. Rule 23(b) does not require such an instruction and the defendant did not request one. If defendant's speculation that Mr. Berger was not persuaded that the government had proven him guilty is correct, the court's failure to instruct the jury to disregard his views would have, if anything, aided rather than injured the defendant in this case.

**4.** The CSO's improper comments to Mr. Berger were not a deliberate effort by the government to provoke a mistrial in order to avert a not guilty verdict. Thus, a retrial would not be barred by the ruling in *Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982) ("Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.").

*bay,* 923 F.2d 1536, 1543 (11th Cir.1991); *Federal Criminal Code and Rules* (West 1993) "Notes of Advisory Committee on Rules" 1983 Amendment, Rule 23(b) at 95 (substitution of juror alternative was rejected because "judgment of the Advisory Committee is that it is far better to permit the deliberations to continue with a jury of 11 than to make a substitution at that point").

After excusing Mr. Berger, the court decided to question the remaining 11 jurors to determine if they could each continue to deliberate fairly and impartially before deciding whether to grant a mistrial because, at that point, the trial had taken almost 11 weeks and it would require considerable government, defense, and judicial resources to retry it. October 28, 1993 Tr. at 31–32. After questioning the jurors individually, the court was convinced that each of them would be unaffected by the information Mr. Berger received or by his excusal, that each remained a fair and impartial juror, and that the demeanor of each juror revealed that none were feeling pressured or anxious despite the length of their deliberations. *Id.* at 85–87.

The court viewed the present case as a paradigm for continuing with 11 jurors and, therefore, denied defendant's motion for a mistrial. *Id.* Rule 23(b) was amended to permit excusing a deliberating juror for just cause and continuing deliberations with the remaining jury in order to strike a proper balance between the fair and efficient administration of justice—a problem recognized to be particularly "acute when the trial has been a lengthy one and consequently the remedy of mistrial would necessitate a second expenditure of substantial prosecution, defense, and court resources." *Federal Criminal Code and Rules* (West 1993); "Notes of Advisory Committee on Rules" 1983 Amendment, Rule 23(b) at 95. The Court of Appeals for the Ninth Circuit has found that the decision to proceed with an 11 person jury after a nine day trial "promotes the underlying purpose of Rule 23(b) [because a] retrial . . . would have involved a

substantial expenditure of tax dollars and the consumption of judicial resources." *Egbuniwe,* 969 F.2d at 763. This conclusion is even more compelling in the present case where the deliberating juror was excused almost 11 weeks after trial had commenced.

At 3:30 p.m., the jury sent the court a note stating that it had not concluded its deliberations and would return the next day at 9:00 a.m. October 28, 1993 Tr. at 111. After counsel were consulted, the jury was excused. *Id.* at 112.

The jury returned the next morning. October 29, 1993 Tr. at 3. It received no further instructions and asked no additional questions.

At 2:50 p.m., the jury reported it had reached unanimous verdicts on three of the four counts. *Id.* at 4. Although the government urged that the jury be required to deliberate further on the fourth count, the court decided to accept the three verdicts reached and that it was manifestly necessary to grant the defendant's motion for a mistrial on the remaining count. *Id.* at 5–8. The jury then returned verdicts of guilty on Counts 1, 2, and 3, and a mistrial was declared on Count 4. *Id.* at 9–11.

The jury's discriminating verdict was compatible with the court's instructions concerning the applicable law, suggesting that it was the product of rational discussion.[5] Moreover, when polled, each juror confidently responded to the Clerk's inquiry, October 29, 1993 Tr. at 11–12, and the jurors did not appear to the court to be feeling pressured or exhausted. These facts confirmed the court's earlier view that the 11 person jury would continue to deliberate properly and return verdicts based upon rational discussion and conscientious conviction, unaffected by any perception of coercion or other improper influence.

Accordingly, the court again finds it was proper to accept the verdict of the 11 jurors who decided the case. *See Ruggiero,* 928 F.2d at 763; *Egbuniwe,* 969 F.2d at 763.

---

5. The court had instructed the jury that defendant could be convicted on Counts 1, 2 and 3 if the government proved, among other things, that he conspired to murder, or aided and abetted in the murder of, James Limoli, but that to convict on Count 4 the jury would have to find that the defendant himself killed Mr. Limoli. *See* October 20, 1993 Tr. at 50–51, 70–72.

## IV. *Order*

For the foregoing reasons, defendant's motion for a new trial is hereby DENIED.