**UNITED STATES of America, Appellee,**

v.

**Marilyn ORTIZ, Defendant–Appellant.**

**No. 1246, Docket 88–1095.**

United States Court of Appeals, Second Circuit.

Argued June 16, 1988.

Decided Sept. 19, 1988.

Colleen P. Cassidy, The Legal Aid Soc., Federal Defender Services Unit, New York City, for defendant-appellant.

Christine Gray, Asst. U.S. Atty., S.D. N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Linda Imes, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for appellee.

Before OAKES, MESKILL and PIERCE, Circuit Judges.

MESKILL, Circuit Judge:

Defendant-appellant Marilyn Ortiz appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York, Metzner, *J.*, on a charge that she possessed heroin with intent to distribute in violation of 18 U.S.C. § 2 (1982) and 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C) (1982 & Supp. IV 1986). A second count, distributing heroin within one thousand feet of a school, *see* 21 U.S.C. § 845a (Supp. IV 1986), was dismissed after the jury failed to agree on a verdict.

At issue in this appeal is the district court's *in limine* ruling on the admissibility of Ortiz's prior state court drug conviction and the ruling's effect on the argument defense counsel was allowed to make to the jury. The government proposed to introduce the conviction as a prior similar act probative of intent under Fed.R.Evid. 404(b).

The district court ultimately concluded that because the defense was based on mistaken identity, the conviction would not be admitted into evidence. In discussing defense counsel's proposed jury argument, the district court warned counsel not to raise the issue of intent to distribute the drugs. Although this decision had significant consequences for the presentation of Ortiz's defense, we conclude that defense counsel's handling of the matter constituted a waiver of her claim. We accordingly affirm her conviction.

## BACKGROUND

The underlying facts may be briefly summarized. The evidence at trial showed that on September 16, 1987, undercover New York City Police Officer Audrey Valentine purchased two glassine envelopes of heroin stamped with the brand name "Vega." Valentine paid the seller $30 in "buy mon-

ey," bills with serial numbers that had been pre-recorded. Officer Valentine testified that she then broadcast a description of the seller as a female Hispanic about five feet five inches in height, clothed in an oversized white T-shirt, belt and sandals. Tr. 31. Approximately fifteen minutes later, New York City Police Detective William Fitzpatrick and Sergeant Richard Jennings observed appellant Ortiz in the area where Officer Valentine had made the buy. Acting on Valentine's description, they arrested Ortiz. Fitzpatrick testified that when he and Jennings approached Ortiz, she threw several items to the ground. They recovered six glassine envelopes of "Vega" brand heroin and $39 in cash, none of which was the pre-recorded buy money. About an hour later, Officer Valentine identified Ortiz as the seller in a one-on-one showup at the police station.

Ortiz's defense was predicated on a theory of mistaken identity. She sought to convince the jury that she was not the woman who sold the heroin to Officer Valentine, and that Detective Fitzpatrick and Sergeant Jennings had arrested the wrong person. She especially emphasized discrepancies between her own appearance and Valentine's broadcast description of the heroin seller. Fitzpatrick's written arrest report did not mention the belt in Valentine's description, and Ortiz was wearing high top sneakers, not sandals, when she was processed at the Metropolitan Correctional Center the following morning. Her defense, in sum, was that she never possessed *any* heroin.

Although evidence of Ortiz's 1982 state court conviction for selling a controlled substance was never admitted, its admissibility influenced the conduct of her trial from start to finish. On the eve of trial, her attorney moved *in limine* for a ruling that the prior conviction was inadmissible under Rule 404(b). The government responded with a letter detailing its argument that the prior conviction would be admissible under Rule 404(b) to rebut a defense of possession without intent to distribute. The government also contended that the conviction should be admissible

under Fed.R.Evid. 609 to impeach Ortiz if she testified.

The court did not rule on either issue until the close of the government's case. After hearing argument, Judge Metzner ruled that Ortiz's prior conviction would be admissible under Rule 609 to impeach her if she testified. The court expressly concluded that "the probative value outweighs the prejudice and [the conviction] will be admitted *for the purpose of impeachment only*." Tr. 86 (emphasis added). Because Ortiz did not testify, she cannot and does not challenge the district court's ruling on this issue. *See Luce v. United States,* 469 U.S. 38, 43, 105 S.Ct. 460, 464, 83 L.Ed.2d 443 (1984).

The admissibility of the prior conviction under Rule 404(b) to show intent was not resolved quite as definitively. Ortiz's counsel represented to the court that

> she did not have the 6 glassines or throw the 6 glassines. That would be her position [if she testified]. *It's not a matter of intent.* It would not go to the issue of intent with respect to [404(b)] if that would be her testimony.... I don't believe there is any relevance under [404(b)] with respect to intent.

Tr. 76–77 (emphasis added). Later, defense counsel repeated that Ortiz "didn't buy the drugs or possess the drugs *either with intent to use or intent to distribute.*" *Id.* at 82–83 (emphasis added). The district court accordingly rejected the government's contention that the defense had placed intent in issue. Judge Metzner stated, "I don't see how [the prior conviction] comes in on a prior similar act [under Rule 404(b)] if the defendant's position is [']I didn't have the glassine envelopes; I never purchased them that night. I was there to buy but I didn't get it and I didn't throw the money away.[']" *Id.* at 85.

Ortiz's counsel nevertheless maintained that he should be able to argue to the jury that possession of six glassine envelopes was as consistent with personal use as with intent to distribute. The court rejected this contention, implicitly on the ground that it was irreconcilable with the theory that Ortiz possessed nothing at all. Under that

theory, Judge Metzner said, he assumed that "there is *no issue of intent* here. You claim she never had [the glassine envelopes]." *Id.* at 87 (emphasis added). The court warned defense counsel, "if you are going to argue to the jury that even if she did have [the heroin] she didn't intend to sell, then I would stop you right in the middle and tell the jury you were misleading them." *Id.* When defense counsel reiterated that he hoped to argue "that 6 glassine bags is consistent with personal use as well as with intent to distribute," the court replied, "Oh, no. If that is what you want to do [then the prior conviction] comes in under 404." *Id.* at 88.

The district court also suggested another rationale for restricting defense argument on this point. Although one government witness had testified on cross-examination that heroin addicts use up to twenty glassine envelopes of heroin a day, *see id.* at 62, there was no evidence that Ortiz herself was a heroin user. The court therefore ruled that the defense could not argue that possession of six envelopes was consistent with personal use because of the absence of record evidence that she was a user. *See id.* at 94, 116–17.

These rulings had two results. First, Ortiz did not testify. Second, the defense made a truncated argument in summation that "[t]here is no evidence that 6 glassines, the possession thereof in and of itself makes out intent to distribute and that is one of the elements ... that the government has to prove beyond a reasonable doubt." *Id.* at 147–48. Defense counsel, apparently mindful of the district court's warning, did not refer to personal use at all. The thrust of the defense closing, consistent with the earlier representations to the court, was that "[t]he person with whom Ms. Valentine had the transaction was not Ms. Ortiz." *Id.* at 144.

In rebuttal, the government responded to the suggestion that it had not proved intent. The prosecuting Assistant United States Attorney stressed that the record contained ample evidence of intent, including certain details about the heroin recovered at the scene of the arrest that were consistent with drug dealers' practices. *See id.* at 150–51.

On appeal, Ortiz argues that her conviction should be reversed because the district court's incorrect analysis of Rule 404(b) resulted in an unfair trial.

## DISCUSSION

Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Under the "inclusionary" or "positive" approach to other acts evidence that controls in this Circuit, other acts or crimes are admissible under Rule 404(b) to prove matters other than the defendant's criminal propensity. *See United States v. Brennan,* 798 F.2d 581, 589 (2d Cir.1986); *United States v. Levy,* 731 F.2d 997, 1002 (2d Cir.1984).

In a recent decision, *Huddleston v. United States,* —— U.S. ——, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the Supreme Court outlined the test for admission of other acts evidence under Rule 404(b). First, to be admissible the evidence must be introduced for a proper purpose, "such as proof of motive, opportunity, intent," etc. The offered evidence must also be relevant, per Rules 401 and 402, to an issue in the case, and the evidence must satisfy the probative-prejudice balancing test of Fed.R.Evid. 403. *See, e.g., Brennan,* 798 F.2d at 589; *Levy,* 731 F.2d at 1002; *see also* Fed.R. Evid. 404(b) advisory committee's note (expressly incorporating Rule 403's balancing test into the test for admissibility under Rule 404(b)). Finally, if the other acts evidence *is* found admissible, the trial court must, on request, give an appropriate limiting instruction to the jury, per Fed.R.Evid. 105. *See Huddleston,* 108 S.Ct. at 1502.

■ This Court has held, however, that a defendant may completely forestall the ad-

mission of other act evidence on the issue of intent by

> express[ing] a decision not to dispute that issue with sufficient clarity that the trial court will be justified (a) in sustaining objection to any subsequent cross-examination or jury argument that seeks to raise the issue and (b) in charging the jury that if they find all the other elements established beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed.

*United States v. Figueroa*, 618 F.2d 934, 942 (2d Cir.1980). *See also United States v. Mohel*, 604 F.2d 748, 753–54 (2d Cir. 1979). Moreover, intent is not placed in issue by a defense that the defendant did not do the charged act at all. *See United States v. Manafzadeh*, 592 F.2d 81, 87 (2d Cir.1979); *United States v. O'Connor*, 580 F.2d 38, 41 (2d Cir.1978). When a defendant unequivocally relies on such a defense, evidence of other acts is not admissible for the purpose of proving intent. *See Figueroa*, 618 F.2d at 940–41; *Mohel*, 604 F.2d at 753; *Manafzadeh*, 592 F.2d at 87.

Defense counsel here sought to use the foregoing principles to keep Ortiz's prior conviction out of evidence. He succeeded in preventing admission of the conviction by repeatedly representing to the district court that intent was not placed in issue by Ortiz's theory that she never possessed *any* heroin. Those representations, standing alone, would have constituted the type of expression of willingness to concede intent that *Figueroa* contemplates. *See* 618 F.2d at 942. The district court then would have been justified in excluding the conviction and charging the jury to find intent if it found the other elements.

Defense counsel was not content to let the matter rest there, however. He insisted that he could still argue to the jury that possession of six envelopes of heroin (a) did not alone prove intent and (b) was as consistent with personal use as with intent to distribute. The court ruled that counsel could make the first argument but that the prior conviction would be admitted under Rule 404(b) if counsel insisted on making the second argument. Counsel chose to forgo the second argument in order to keep from the jury evidence of the prior conviction. The limited reference to intent in counsel's summation nevertheless opened the door to government rebuttal on the issue.

Ortiz now contends that the district court failed to perform the necessary Rule 403 balancing of the probative value of her prior conviction against its prejudicial effect. *See* Fed.R.Evid. 404(b) advisory committee's notes; *see also, e.g., United States v. Wiley*, 846 F.2d 150, 155–56 (2d Cir. 1988); *United States v. Everett*, 825 F.2d 658, 661 (2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1035, 98 L.Ed.2d 999 (1988). She argues that the court's conditional ruling on the admissibility of the prior conviction was therefore incorrect, and that this alleged error requires reversal because it forced her counsel to restrict his closing argument. She also notes that the government responded to her hobbled argument with comparatively unrestrained comments on the intent issue.

■ To the extent that Ortiz rests her appeal on the imbalance of her closing as against the government's rebuttal on the intent issue, her claim was not preserved because her counsel failed to object to the rebuttal. In the absence of such an objection, our inquiry is limited to "whether the challenged argument amounted to a 'flagrant abuse.'" *United States v. Perez*, 702 F.2d 33, 37 (2d Cir.) (quoting *United States v. Perry*, 643 F.2d 38, 51 (2d Cir.), *cert. denied*, 454 U.S. 835, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981)), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2457, 77 L.Ed.2d 1336 (1983). *See also United States v. Wilkinson*, 754 F.2d 1427, 1435 (2d Cir.) (appellate review of statements made in prosecution's summation limited to statements to which objection is made), *cert. denied*, 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985). Given defense counsel's argument to the jury about intent, we conclude that the prosecutor's rebuttal comments did not constitute a flagrant abuse or plain error. We accordingly hold that the failure to object constituted a waiver of claimed error based on the government's rebuttal, includ-

ing any allegation that the government enjoyed unfair advantage as a result of the district court's ruling on the Rule 404(b) issue.

Ortiz principally argues that the restriction of her own counsel's closing argument requires reversal. We disagree. We conclude that the manner in which Ortiz's counsel handled this matter at trial precludes Ortiz from raising it on appeal. Defense counsel originally made a tactical decision to trade the potential benefits of a full argument on personal use in return for exclusion of the damaging evidence of a prior drug conviction. The district court reasonably believed, at that juncture, that the defense had taken the issue of intent out of the case, see, e.g., Tr. 76–77, thus there was simply no reason for the district court to proceed to the Rule 403 analysis, the balancing of the probative and prejudicial effects of the other crimes evidence.

Subsequently, however, in response to an explicit request from the government for a stipulation conceding the issue of intent, see Tr. 86–87, the defense apparently refused to concede intent altogether. As a result, the court would have been justified in allowing the prior conviction into evidence and permitting both sides to develop before the jury their arguments on the intent issue. Had Ortiz clearly conceded intent, the district court would have been obliged to remove the issue from the case altogether, see Mohel, 604 F.2d at 751–54; Manafzadeh, 592 F.2d at 86–87, foreclosing summation comment by either side and leaving the jury to consider only the mistaken identity defense. In an attempt to make sense out of Ortiz's straddle on the intent issue, the district court allowed a hybrid presentation that included limited argument on the intent issue while excluding evidence of the prior drug conviction.

Ortiz's decision to forgo complete argument resulted in a record that poses significant problems for a reviewing court. Although the opposite choice by counsel would have led to admission into evidence of the prior conviction, the record would at least contain fully developed argument from both sides on the intent question and

probably some cautionary instruction to the jury on the use of prior conviction evidence. Then, if we decided that evidence of the prior conviction was inadmissible under 404(b) or excludable under 403, we would be in a better position to determine whether Ortiz was denied a fair trial. As a result of the defendant's tactical decision, however, the record was only minimally developed.

■ As the Supreme Court has observed in a slightly different context, "[a] reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context." Luce, 469 U.S. at 41, 105 S.Ct. at 463. In Luce, the Court held that a defendant who does not testify cannot obtain review of a district court's in limine ruling about admissibility of a prior conviction for impeachment purposes under Rule 609. Id. at 43, 105 S.Ct. at 464. When the defendant does not testify, "[a]ny possible harm flowing from [such an] in limine ruling ... is wholly speculative." Id. at 41, 105 S.Ct. at 463. The instant case presents comparable difficulties. Although the district court ruled that it would admit Ortiz's prior conviction if defense counsel insisted on arguing personal use, the effect of the court's decision remained inchoate, its consequences unknowable because defense counsel did not insist on making his personal use argument. Such insistence would have led to full development of an adequate record for purposes of appellate review. Defense counsel's contrary choice deprives us of such a record. Because trial counsel made that choice and obtained the trial advantage of a limitation of evidence on the intent issue, Ortiz cannot now challenge the evidentiary ruling because trial counsel's tactics caused an inadequate record for review. Otherwise, we would be forced to speculate on whether an evidentiary ruling denied Ortiz a fair trial or was merely harmless error.

In Luce, the defendant's failure to testify was attributed to the district court's adverse determination on the in limine Rule 609 motion. The Court observed that unless a defendant is required to testify to

obtain review in such a situation, "the appellate court could not logically term 'harmless' an error that presumptively kept the defendant from testifying. Requiring that a defendant testify ... will enable the reviewing court to determine the impact any erroneous impeachment may have had *in light of the record as a whole.*" 469 U.S. at 42, 105 S.Ct. at 464 (emphasis added). Similar considerations apply in the instant case. Because of defense counsel's tactical decision, we do not know whether he would have laid an evidentiary foundation for the proposition that Ortiz was a drug user or addict. We do not know what exact language defense counsel would have used or what response the government would have made. We do not know what charge Judge Metzner would have given to the jury. On this record we cannot "logically term 'harmless'" a ruling that presumptively kept Ortiz from making the argument about the inference of personal use. Thus, to hold that Ortiz's claim was preserved "would result in the windfall of automatic reversal," *id.,* on the basis of the district court's *in limine* ruling.

Our decision today is a narrow one. We hold only that Ortiz's failure to challenge the district court's adverse disposition of the *in limine* Rule 404(b) motion by insisting on the right to make the full personal use argument constitutes a waiver of any claim of error in that decision. The proper method to preserve a claim of error in similar circumstances is to take the position that leads to the admission of the adverse evidence, in order to bring a fully developed record to this Court. Otherwise, as in *Luce,* the reviewing court is obliged to indulge in unacceptable appellate speculation.

For the foregoing reasons, we hold that Ortiz waived any claim based on the district court's restriction of her counsel's closing argument. We therefore affirm the judgment of conviction.

PIERCE, Circuit Judge, concurring:

I concur in the result in the majority's opinion and in the discussion which affirms the district court's limitation of defense counsel's closing arguments. I respectfully disagree with the majority's reliance by analogy upon *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) in reaching this result.

In *Luce,* the Supreme Court affirmed the Sixth Circuit's finding that a district court did *not* commit reversible error when, in ruling a defendant's prior convictions admissible for impeachment purposes under Rule 609(a) of the Federal Rules of Evidence, the district court did not first undertake the probative-prejudicial balancing required by that Rule. *See Luce,* 469 U.S. at 40, 105 S.Ct. at 462. As I read *Luce,* the Court held essentially that it was not possible for the lower courts to weigh the probative and prejudicial effects of the impeaching evidence unless the defendant actually testified. For the trial court to do that balancing, or for the appellate court to review the trial court's decision, would, in the Court's view, have required hollow speculation. The Court therefore held that the defendant could not, on appeal, challenge the admission of the prior-crimes evidence unless he testified at trial, and subjected himself to possible impeachment. "'Only in this way,'" wrote the Court, "'may the claim be presented to a reviewing court in a concrete factual context.'" *Id.* at 43, 105 S.Ct. at 464 (quoting *New Jersey v. Portash,* 440 U.S. 450, 462, 99 S.Ct. 1292, 1299, 59 L.Ed.2d 501 (1979) (Powell, J., concurring)).

The *Luce* Court based its holding on the fact that, until the testimony of a defendant unfolds on the record, it is very difficult for a trial court (or an appellate court) to determine how probative of the defendant's lack of credibility the convictions introduced under Rule 609(a) would be, and how unfairly prejudicial those prior convictions would be to him.

This case, however, involves a very different question. Here, the district court *could,* prospectively, have reviewed what the defense counsel's arguments would have been, and could have held the defense counsel to those proffers of argument. In contrast, in *Luce* the Court noted that the defendant's prospective offer of testimony

would not make the district court's ruling any less speculative, because "his trial testimony could, for any number of reasons, differ from the proffer." 469 U.S. at 41 n. 5, 105 S.Ct. at 463 n. 5. However, a defense counsel's description to the court of his proposed arguments is far more predictable and binding, and would give a district court far surer grounds on which to base its balancing of the probative and prejudicial effects of the other-acts evidence. Thus, unlike in *Luce,* the courts would not have to indulge in unreasonable speculation in undertaking the type of Rule 403 balancing demanded here by the appellant.

In this case, the thrust of the defendant's appeal is that the district court erred in failing to undertake the Rule 403 balancing before threatening to admit the defendant's prior convictions if she raised the question of personal drug use. The defendant argues that the threat was inappropriate, and that the result—the limiting of the defendant's summation—constituted reversible error.

Warrant for the district court's action is to be found in *United States v. Mohel,* 604 F.2d 748, 754 n. 12 (2d Cir.1979). Once a defendant has taken intent out of a case, that defendant cannot thereafter, without sufficient reason, attempt to renege on that waiver by reintroducing the issue of intent. "[Under such circumstances], the trial court [may] devise appropriate remedies, such as striking contrary evidence or *remarks proffered by defense counsel." Id.* (emphasis added). In deciding whether, and to what extent, to address the defendant's reversal of position, the trial court must balance both its need to administer the trial effectively and the threat of significant unfairness to the prosecution, against the defendant's right to a full and fair opportunity to present his defense. If the defendant persists and in effect reintroduces the issue of intent, or, alternatively, if he insists on reintroducing the issue of intent and offers reasonable grounds therefor, the court should ensure that the requisites of the *Huddleston* test are met, *see* — U.S. —, 108 S.Ct. 1496, 1502, 99

L.Ed.2d 771 (1988), before the other-acts evidence is admitted under Rule 404(b).

Plainly, the shifts of position by defense counsel in this case went beyond the broad flexibility to be afforded a defendant in such circumstances. The district court therefore acted prudently and correctly in its effort to shape an "appropriate remedy" for the meanderings of the defense on the question of intent.

Applying the analysis suggested by *Mohel* to the facts of this case, the district court acted within its discretion when it refused to allow defense counsel to take unfair advantage of the defendant's earlier concession that intent was out of the case. I concur, therefore, in the result of the majority opinion, but only in so much of the opinion as does not rely by analogy upon the reasoning of *Luce.*