[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-12158
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 29, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00511-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WALTER LEWIS,
a.k.a. Casanova,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 29, 2005)

Before ANDERSON, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Walter Lewis, a.k.a. Casanova, was convicted by a jury on two counts of possession with intent to distribute five or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a), (b)(1)(B)(iii). Lewis argues that the district court erred during his trial by admitting evidence of prior drug convictions and by permitting a government witness to testify that he had purchased drugs from Lewis in the past. He also challenges his 262-month sentence, arguing that the district court (1) violated his Eighth Amendment right to be free of cruel and unusual punishment, (2) plainly erred by sentencing him on the basis of his prior convictions in light of Blakely v. Washington, 524 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and (3) plainly erred under Blakely by enhancing his sentence on the basis of a drug quantity not charged in his indictment or proved at trial. For the reasons set forth more fully below, we affirm.

Lewis was indicted on two counts of possession with intent to distribute at least five grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii). Count I alleged that Lewis had trafficked in cocaine base on July 17, 2003, and Count II alleged the same crime on August 13, 2003. He pled not guilty and proceeded to a jury trial.

Prior to trial, the government filed a notice of its intention to introduce, pursuant to Fed.R.Evid. 404(b), evidence that Lewis had been indicted and

convicted in Georgia state courts for (1) selling heroin in 1974; (2) possession with intent to distribute heroin and cocaine in 1990; (3) possession of heroin in 1991; and (4) possession with intent to distribute heroin in 1993. In support, it argued that it had the burden of proof regarding intent, and the prior convictions were highly probative of that element of the crime. It further argued that the evidence would not be unduly prejudicial because the prior convictions were similar to the charges he presently faced, were required to rebut any defense of entrapment, and were not too remote.

In response, Lewis filed a motion in limine to exclude the government's 404(b) evidence, arguing that (1) the types of drugs in those convictions were not the same as the drugs presently charged; (2) the mere possession charges were not probative of intent; (3) the 1974 charge was too remote and not relevant; and (4) the evidence was being introduced solely to prove propensity, and was prejudicial to the jury. Finally, the government supplemented its notice of intent to include a 1999 state conviction for possession and sale of cocaine.

The district court deferred its rulings until trial, where it heard argument regarding the use of the 404(b) evidence. There, the government reiterated its argument that the prior convictions went to the element of intent. Lewis responded that intent was not an issue in the case because he was proceeding on a defense of

3

mistaken identity, i.e., that Lewis, after stipulating that the government could prove the existence of drugs and their weight, was not the man responsible for the crimes charged. The government responded that Lewis's stipulations did not go to intent, and that the prior convictions were both necessary to prove that element of the offenses and did not first require a conspiracy charge to be admissible. The district court granted Lewis's motion to exclude, but indicated it would be willing to reconsider its ruling at a later point.

Finally, the government sought the court's permission to ask a cooperating defendant, David Green, whether he had previously purchased drugs from Lewis, noting that its purpose was to establish the witness's credibility and foundation for personal knowledge. Lewis objected, claiming he had not received timely notice and the elicited testimony would be prejudicial, and irrelevant. Lewis's objection was overruled.

At trial, Lewis's opening statement suggested that on August 13, 2003, the date of Lewis's arrest, a passenger in his car, convicted felon Willie Davis, was the owner of the cocaine seized by government agents. As to the charge arising out of the July 17, 2003, transaction, Lewis suggested to the jury that a government informant, David Green, who had been convicted of perjury and was testifying only to get a reduced sentence on his conviction for felon in possession of a

firearm, simply "set up" Lewis for his own benefit.

To prove its case the government first called Felisha Rutledge, an Atlanta police officer, whose testimony established that on July 17, 2003, she accompanied Green as an undercover officer to Apartment 13 at 21 Delmont Drive in Atlanta, Georgia, and witnessed Green purchase from Lewis $500 of crack cocaine that was later delivered to Agent Lee Clinard of ATF. The government then read into the record Lewis's stipulation that the drugs seized from the apartment weighed 11.79 grams and were found to be cocaine base.

Next, Green testified that he had known Lewis for eight or nine years, had bought drugs from Lewis prior to July 2003, and had visited Apartment 13 six or seven times before. He further testified that he contacted Lewis on July 17, 2003, seeking to purchase half an ounce of cocaine for $500, a sale that was consummated and witnessed by Rutledge. Finally, on August 13, 2003, Green, at the direction of Agent Clinard, contacted Lewis seeking to purchase an ounce of cocaine for $1,000 at the Delmont Drive apartment. On cross-examination, Lewis presented Green to the jury as a convicted felon and a liar who was only testifying on behalf of the government to get his sentence reduced.

Further testimony showed that on August 13, 2003, ATF agents stopped Lewis and a passenger, identified as Willie Davis, at the Delmont Drive parking

5

lot, at which point a witness observed Lewis throwing what looked like a brown paper bag from the driver's side of the car to the passenger's side. Lewis was arrested pursuant to a warrant, and the brown paper bag was seized and found to contain small ziplock bags as well as crack cocaine. The government then read onto the record Lewis's stipulation that the drugs seized on August 13, 2003, were analyzed, weighed, and determined to be 33.8 grams of cocaine base.[1]

The government then renewed its request to present its 404(b) evidence of Lewis's prior drug convictions, arguing that "the defense is going to argue that Willie Davis was the one who possessed the drugs on August 13th, and that in part you can believe that he's the one because he's a bad person who has used aliases and has a criminal conviction." Both the government and Lewis restated their initial arguments regarding intent, and ultimately the court ruled that the government could admit only the 1999 conviction for possession and sale of cocaine and the 1993 conviction for possession with intent to distribute heroin. It stated that it believed "the priors would assist the government in establishing what Mr. Lewis's intent was when he threw the bag of cocaine, if indeed he did throw it." After reading Lewis's stipulations to the convictions, the government asked the court for permission to allow the apartment manager at Delmont Drive to

---

[1] The court took judicial notice that one ounce equals 28.3 grams. (R2 at 73-74).

testify that he witnessed people coming and going to Lewis's apartment at ten-minute intervals. Lewis objected and was overruled on grounds that the testimony was intrinsic to the charged offense.

The government next submitted testimony establishing that Lewis was the tenant of apartment 13 at 21 Delmont Drive, and that he had provided a drivers' license and paid the deposit and first week's rent in cash. The testimony was rebutted by Lewis's sister, who testified that he lives with her at 1290 Loch Lomond Trail, and that he spends every night there.

Finally, Lewis submitted into evidence a stipulation that Willie Davis (1) was the passenger in the vehicle stopped on August 13, 2003; (2) used four different aliases; (3) used four different dates of birth and five different social security numbers; (4) was convicted in 1991 for being a felon in possession of a firearm; and (5) has an outstanding warrant for a probation violation. Lewis's closing statement posed numerous questions to the jury about the quality of the police work and implied that it had not been proven that Lewis was even present in the apartment on July 17, 2003, or that the bag of drugs found in Lewis's car on August 13, 2003, was his and not Willie Davis's. In its jury charge, the court included a limiting instruction about the use of "similar acts," stating that it could be used only to determine whether the defendant had the intent to commit the

7

charged crimes after the jury had decided that he, in fact, had committed the acts charged. This charge was singled out by Lewis during his closing statement. The jury convicted Lewis on both counts

A pre-sentence investigation report ("PSI") was completed based on the federal sentencing guidelines, and it calculated Lewis's base offense level at 32 upon a finding that Lewis was responsible for more than 50 but less than 150 grams of cocaine base, U.S.S.G. § 2D1.1(c)(4). This calculation was based on Lewis's two stipulations at trial as well as a July 3, 2003, seizure of 19.5 grams of cocaine base that was neither charged in the indictment nor proven at trial, but was included as relevant conduct. With no offense, victim, or acceptance of responsibility enhancements or reductions, Lewis's total offense level was 32. However, because Lewis had at least two prior felony convictions of a controlled substance, he was categorized as a "career offender," and the mandatory offense level prior to any adjustments was 34 pursuant to U.S.S.G. § 4B1.1(b)(B).

Lastly, Lewis's criminal history was calculated at 21 points, with an additional three points added because the instant offense occurred while Lewis was on parole and within two years of his release from custody on a drug violation, for a total of 24 points. However, based on his career offender status, Lewis automatically was placed at criminal history category VI, with a possible

sentencing range of 262-327 months' imprisonment.

Lewis filed several objections to the PSI, first arguing that the information provided to police by an informant regarding a July 3, 2003, stop and seizure was unknown to him and not disclosed during discovery. He further objected that the drug quantities from the July 3, 2003, seizure should not be considered because those charges were not a part of the present case. Lewis also argued that the guidelines treat cocaine base more harshly than cocaine without giving a clear definition of cocaine base. Next, Lewis argued that his offense level should be changed to reflect that he was convicted of possessing more than 5 but less than 50 grams of cocaine base. Finally, he objected that no criminal history points should be assessed for a 1988 conviction that was more than 15 years removed from the instant offense and that he was released to parole on April 20, 2002, not 2003.

At the sentencing hearing, the district court found that any error resulting from inclusion of the July 3, 2003, drug quantities had no effect on Lewis's sentence, and overruled his objection. As to Lewis's contention that the guidelines do not adequately define cocaine base, the court found that it was commonly understood that cocaine base and crack were the same thing, and his objection was overruled. As to Lewis's 1988 conviction, the government argued that, even if the three points were removed, Lewis would still be at criminal history category VI,

but in any event, the points were properly calculated because Lewis's sentence was not imposed until October 5, 1988, pulling it within the 15-year period as contemplated in the guidelines for criminal history computation. The court agreed, overruling Lewis's objection. No constitutional objections of any kind were made.

Based on the foregoing, the court sentenced Lewis to 262 months' imprisonment on each count to run concurrently, stating that it could not "give [him] any less than the 262 months. And that is what I'm going to do." (Id. at 14).

## I. Admission of Prior Convictions

Lewis argues on appeal that the district court abused its discretion by admitting into evidence Lewis's prior convictions for drug possession because he never placed intent at issue during the trial. Because his defense was mistaken identity, Lewis argues that admitting the prior convictions into evidence was unduly prejudicial, citing the persuasive authority of United States v. Ortiz, 857 F.2d 900 (2d Cir. 1988).

"The district court has broad discretion to determine the admissibility of evidence, and we will not disturb the court's judgment absent a clear abuse of discretion." United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998). "The abuse of discretion standard has been described as allowing a range of choice for the district court, so long as that choice does not constitute a clear error of

10

judgment." United States v. Kelly, 888 F.2d 732, 745 (11th Cir. 1989).  Rule

404(b) provides that evidence of "other crimes, wrongs, or acts, is not admissible

to prove the character of a person in order to show action in conformity therewith.

It may, however, be admissible for other purposes, such as proof of motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake

or accident."  Fed.R.Evid. 404(b).  Even then, "[t]o be admissible, 404(b) evidence

must (1) be relevant to one of the enumerated issues and not to the defendant's

character; (2) the prior act must be proved sufficiently to permit a jury

determination that the defendant committed the act; and (3) the evidence's

probative value cannot be substantially outweighed by its undue prejudice, and the

evidence must satisfy Rule 403."[2]  United States v. Chavez, 204 F.3d 1305, 1317

(11th Cir. 2000).

   "'Evidence of prior drug dealings is highly probative of intent to distribute a

controlled substance . . . .'"  United States v. Cardenas, 895 F.2d 1338, 1344 (11th

Cir. 1990) (quoting United States v. Hitsman, 604 F.2d 443, 448 (5th Cir. 1979)).

Furthermore, "a not guilty plea . . . makes intent a material issue and opens the

door to admission of prior drug-related offenses as highly probative, and not overly

---

[3] Rule 403 states: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed.R.Evid. 403.

11

prejudicial, evidence of a defendant's intent." See United States v. Calderon, 127 F.3d 1314, 1332 (11th Cir. 1997).

Here, the court correctly ruled that Lewis's prior convictions would "assist the government in establishing what Mr. Lewis's intent was when he threw the bag of cocaine, if indeed he did throw it." Lewis pled not guilty to two counts of possession with intent to distribute cocaine base. While he arguably proceeded on a defense of mistaken identity as to Count I (the July 17 transaction), the record shows that his defense on Count II (the August 13 transaction) was not mistaken identity, but that his passenger, Willie Davis, was the owner of the drugs found in the car based on his criminal record. As to both counts, there was no stipulation as to intent, and the government was required to prove that element of the offense, as evidenced by the jury charge, which unequivocally stated that the government had to prove beyond a reasonable doubt that Lewis "knowingly and willfully possessed cocaine base or [crack] as charged [and] that [Lewis] possessed the crack with the intent to distribute." Furthermore, the district court only permitted the government to present two of the prior convictions, as opposed to all five, and expressly instructed the jury that it could only consider the evidence when deciding intent, a point Lewis raised in his closing argument.

Lewis's reliance on the persuasive authority of United States v. Ortiz, 857

12

F.2d 900 (2d Cir. 1988) is misplaced because Lewis, unlike the defendant in <u>Ortiz</u>, did not affirmatively take the issue of intent out of the case. <u>See</u> <u>Ortiz</u>, 857 F.2d at 902-03. Thus, Lewis's argument, that the evidence was prejudicial because intent was not at issue, is meritless.

In <u>United States v. Holman</u>, 680 F.2d 1340 (11th Cir. 1982) we found that the defendant had not taken intent out of the case, but merely indicated that he would not actively dispute its existence. <u>Holman</u>, 680 F.2d at 1349. That, however, did not remove the burden of proof on the issue from the government. <u>Id.</u> Like in <u>Holman</u>, Lewis here did not affirmatively remove the issue of intent from the case or stipulate that intent existed. The government, therefore, as indicated in both the jury instructions and Lewis's own closing statement, was required to prove intent, a burden heightened by Lewis's attempt to attribute the crack seized from his car to Willie Davis, a felon. Accordingly, the district court did not abuse its discretion by admitting into evidence two of Lewis's drug convictions.

## II. Testimony of Prior Drug Purchases

Lewis argues that Green should not have been allowed to testify about drug purchases that occurred prior to the dealings preceding the period covered in the indictment. He argues that the testimony was prejudicial and unnecessary because

13

he did not place intent at issue, and, therefore, he argues that the only purpose of the testimony was to prove propensity for criminal activity in violation of Fed.R.Evid. 404(b).

As previously noted, "[t]he district court has broad discretion to determine the admissibility of evidence, and we will not disturb the court's judgment absent a clear abuse of discretion." McLean, 138 F.3d at 1403.

The testimony Lewis finds objectionable was elicited as follows:

Q: Prior to July 2003, did you ever buy drugs from the defendant?

A: Yes.

The government specifically requested that it be allowed to ask Green that one question to establish foundation, personal knowledge, and credibility, and it specifically indicated that it would not ask for details. The district court agreed with the government, stating that the testimony was "important to explain the relationship between the witness and the defendant . . . otherwise, I think his testimony might seem truncated, or . . . it might cost the witness some credibility if he doesn't say anything about why he happened to be going to see the defendant on the particular occasion involved in our case."

"Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted

14

if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." McLean, 138 F.3d at 1403, quoting United States v. Williford, 764 F.2d 1493, 1499 (11th Cir. 1985). Here, the very limited question was asked solely to indicate why the government's witness would have even been involved with Lewis, and did not indicate anything specific or prejudicial. The question and response clearly placed Green's testimony and involvement in context, and it was not an abuse of discretion to allow that testimony. It is notable as well that Lewis did not even renew his objection when the question was asked.

Lewis argues that his case is similar to United States v. Hubert, 138 F.3d 912 (11th Cir. 1998), where we held that, where the defendant was indicted on criminal activity between July 1992 and July 1993, it was error to permit the defendant's co-conspirator to testify that:

> [H]e and Hubert started using drugs in the 1970's; that he and Hubert had always been partners in drug dealing; that at one time he and Hubert had an apartment together in Miami from which they sold marijuana and powder cocaine; that in the late 1980's, Hubert supplied him with cocaine from time to time; that starting in 1990, Hubert regularly sold him cocaine powder which he would then cook into crack cocaine; and that in 1991, he and Hubert reaffirmed their drug dealing partnership, agreeing to a 50/50 split in profits.

Hubert, 138 F.3d at 914. We went on to find that the error was harmless based on the rest of the evidence against him. Id.

15

The limited testimony elicited in this case does not square with the facts in Hubert.  The level of specific detail in the testimony of the co-conspirator in Hubert, encompassing 20 years of criminal history, does not bear any resemblance to the testimony elicited here, which merely indicated that the government's cooperating witness, Green, had purchased drugs from Lewis in the past, clarifying why he would have contacted Lewis in the first place.  It cannot be said that the district court abused its discretion in permitting such limited testimony.

### III.  Lewis's Sentence Under the Eighth Amendment

Lewis argues for the first time on appeal that the district court's 262-month sentence violates the Eighth Amendment's ban on cruel and unusual punishment because the sentence is grossly disproportionate to his underlying offenses that involved a small amount of cocaine base and his non-violent criminal history.  He further argues that mandatory minimums outside of the federal system as high as 262 months' imprisonment for possessing less than 50 grams of cocaine base are unusual, and that mandatory minimum sentences unconstitutionally violate separation of powers principles, citing no authority for these propositions.  Finally, he argues that some alternative method other than the mandatory guidelines should have been used to impose his sentence.

Where, as here, no timely constitutional objection was made in the district

16

court, we will review only for plain error. United States v. Candelario, 240 F.3d 1300, 1306 (11th Cir. 2001). ("If the defendant either does not raise the constitutional objection or does not raise it in a timely fashion, he is entitled only to plain error review."). Under plain error review, an appellant must show there was (1) an error (2) that is plain (3) which affects the appellant's substantial rights and (4) affects the fairness and integrity of the judicial proceedings. United States v. Olano, 507 U.S. 725, 730, 113 S.Ct. 1770, 1775, 123 L.Ed.2d 508 (1993).

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" Ewing v. California, 538 U.S. 11, 20, 123 S.Ct. 1179, 1185, 155 L.Ed.2d 108 (2003). In evaluating an Eighth Amendment challenge, we must first make "a threshold determination that the sentence imposed is grossly disproportionate to the offense." United States v. Brant, 62 F.3d 367, 368 (11th Cir. 1995).

In Brant, we upheld as constitutional a 188-month sentence imposed for manufacture of marijuana, explicitly noting that the career offender provisions of the sentencing guidelines did not violate the Eighth Amendment. Brant, 62 F.3d at 368. In the absence of the career offender provisions, the defendant could have been sentenced to 70 months. Id. Moreover, the "Supreme Court has squarely

17

rejected an Eighth Amendment challenge to a 40-year sentence imposed under Virginia law for possession of nine ounces marijuana." Id. citing Hutto v. Davis, 454 U.S. 370, 371-375, 102 S.Ct. 703, 704-706, 70 L.Ed.2d 556 (1982).

We have also held that the provision found in 21 U.S.C. § 841, mandating a sentence of life imprisonment for a felony drug offense committed after two prior convictions for felony drug have become final, is constitutional and not violative of the Eighth Amendment.[3] United States v. Willis, 956 F.2d 248, 250-51 (11th Cir. 1992). Similarly, the provisions of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), requiring a 15-year minimum mandatory sentence if a felon convicted of weapon possession has three prior convictions for either violent felonies or serious drug offenses do not violate the Eighth Amendment. United States v. Reynolds, 215 F.3d 1210, 1214 (11th Cir. 2000).

Contrary to Lewis's assertions, his prior drug convictions are not entitled to leniency because they involved no theft or violence. Lewis had no fewer than six different state convictions for drug trafficking at the time he was sentenced, demonstrating a need to curb his recidivism. See Ewing, 538 U.S. at 29, 123 S.Ct.

---

[3] In Willis, the government chose to use the provisions found in 21 U.S.C. § 851, which require it to file an information giving notice of its intention to use prior convictions to enhance a defendant's sentence. Willis, 956 F.2d at 250. In the present case, the government appears to have had the option of doing the same, and did not exercise that right, relying on the "career offender" provisions instead of the mandatory sentence requirements of § 841.

18

at 1189-90 (stating, in the context of California's "three strikes" sentencing law: "In weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism. Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions."). Even the district court was struck by Lewis's criminal history, stating: "I'll tell you what, Mr. Lewis. Yours is the longest rap sheet I've seen in years. And I'm not exaggerating about that. This is a terrifically long rap sheet."

Given Lewis's history of drug trafficking, and our various holdings that enhanced sentences do not violate the Eighth Amendment, any error the district court committed by imposing a 262-month sentence was neither "plain" nor "obvious," nor were Lewis's substantial rights violated in any way.

### IV. Lewis's Sentence Enhanced by Prior Convictions

Lewis argues for the first time on appeal that the district court violated his Sixth Amendment right to a jury under Blakely v. Washington by enhancing his sentence on the basis of his prior convictions and criminal history.

Where, as here, no timely constitutional objection was made in the district court, this Court will review for plain error. Candelario, 240 F.3d at 1306; United States v. Rodriguez, No. 04-12676, manuscript op. at 15 (11th Cir. Feb. 4, 2005).

19

Under plain error review, an appellant must show there was (1) an error (2) that is plain (3) which affects the appellant's substantial rights and (4) affects the fairness and integrity of the judicial proceedings. Olano, 507 U.S. at 730, 113 S.Ct. at1775.

The career offender provision of the guidelines states: "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). If a defendant is found by a judge to be a career offender under § 4B1.1(a), the defendant's offense level is enhanced under § 4B1.1(b) if the offense level under § (b) is greater than the otherwise-applicable offense level. See U.S.S.G. § 4B1.1(b).

To decide the issue presented by Lewis on appeal–that his sentence violated Blakely because the district court, rather than a jury, made the findings necessary to increase his sentence under § 4B1.1–we must review the applicable Supreme Court precedent pertaining to sentence enhancements based on prior convictions, and consider the Supreme Court's recent decision in United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, ___ L.Ed.2d ___(2005), which was announced after the present parties filed their appellate briefs.

20

"In Almendarez-Torres v. United States, the Supreme Court held that the government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for purposes of enhancing a sentence." United States v. Marseille, 377 F.3d 1249, 1257 (11th Cir. 2004).

In Apprendi, the Supreme Court declined to revisit Almendarez-Torres, and it held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 489-90, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000) (emphasis added).

In Blakely, the Supreme Court applied the rule it announced in Apprendi to the State of Washington's Sentencing Reform Act. 542 U.S. ___, ___, 124 S.Ct. 2531, 2534-36, 159 L.Ed.2d 403 (2004). There, the Supreme Court struck down an upward departure imposed under Washington's sentencing system that was based solely on judicial factfinding, clarifying that the relevant "statutory maximum for Apprendi purposes is the maximum a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. at ___, 124 S.Ct at 2534-38 (emphasis omitted).

In Marseille, we refused to interpret the Supreme Court's rationale in

21

Apprendi as overruling the prior Supreme Court decision in Almendarez-Torres. 377 F.3d at 1257. We further concluded that Blakely "does not take such fact-finding out of the hands of the courts." Id. at 1257-58 n.14; see also United States v. Guadamuz-Solis, 232 F.3d 1363 (11th Cir. 2000) (holding that Almendarez-Torres remains the law after Apprendi).

In Booker, the Supreme Court concluded that its holding in Blakely applied to the Federal Sentencing Guidelines, and it reaffirmed its holding in Apprendi: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. ___, 125 S.Ct. 738, 756, ___ L.Ed.2d ___ (2005).

Accordingly, insofar as the district court's enhancement of Lewis's sentence under § 4B1.1 merely involved a determination that Lewis had prior convictions, the enhancement did not implicate Apprendi, Blakely, or Booker, as those cases clearly exempt prior convictions from the types of facts that must be admitted by the defendant or proved to a jury beyond a reasonable doubt in order to support a sentence enhancement. Therefore, the district court committed no error, plain or otherwise.

### V. Lewis's Sentence Enhancements Based on Drug Quantity

22

Lewis argues that the district court violated his Sixth Amendment right to a jury under Blakely by enhancing his base offense level on the basis of an additional 19.7 grams of cocaine base allegedly seized from him during an arrest that occurred prior to the offenses charged in his indictment. Specifically, Lewis argues that, but for the inclusion of the 19.7 grams of cocaine base, he would have been given a base offense level of 30 rather than 32.

Assuming arguendo that the district court erred by basing its sentence on an additional 19.7 grams of cocaine base not charged in Lewis's indictment, "once the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, [i.e.], that the error did not affect the district court's selection of the sentence imposed." Williams v. United States, 503 U.S. 201, 203, 112 S.Ct. 1120-21, 117 L.Ed.2d 341 (1992). Here, the additional 19.7 grams of drugs attributed to Lewis at sentencing did not affect his sentence in any way, as he was found to be a career offender, mandating a minimum base offense level of 34. As noted above, the career offender provisions of the guidelines, based as they are on prior convictions, do not violate a defendant's Sixth Amendment right to a jury. Accordingly, any error the district court may have committed by making factual findings regarding drug quantities for sentencing purposes was

23

harmless as it did not impact Lewis's sentence.

In sum, the district court did not abuse its discretion by admitting evidence of Lewis's prior convictions or by permitting a witness to testify that he had previously purchased drugs from Lewis, and this Court should affirm Lewis's conviction. Moreover, Lewis's sentence did not violate the Eighth Amendment's prohibition against cruel and unusual punishment, nor did it violate his Sixth Amendment right to a jury because his sentence was based on his career offender status, which need not be proven to a jury under current Supreme Court and Eleventh Circuit precedent. Based on the foregoing, we affirm Lewis's convictions and sentences.

**AFFIRMED.**