**Darrell DAVENPORT, Petitioner,**

v.

**Mark BRADT, Superintendent, Respondent.**

No. 07–CV–722.

United States District Court, W.D. New York.

May 30, 2008.

Darrell Davenport, Comstock, NY, pro se.

Michael J. Hillery, Buffalo, NY, for Respondent.

## ORDER

RICHARD J. ARCARA, Chief Judge.

This case was referred to Magistrate Judge Victor E. Bianchini, pursuant to 28 U.S.C. § 636(b)(1). Petitioner filed a petition for a writ of habeas corpus. On April 29, 2008, Magistrate Judge Bianchini filed a Report and Recommendation, recommending that the petition be dismissed.

Petitioner filed objections to the Report and Recommendation on May 22, 2008.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the

Report and Recommendation, and after reviewing the submissions, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Bianchini's Report and Recommendation, the petition for a writ of habeas corpus is dismissed. The Clerk of Court shall take all steps necessary to close the case.

The Court finds that petitioner has failed to make a substantial showing of the denial of a constitutional right and therefore denies his motion for a certificate of appealability. 28 U.S.C. § 2253(c)(2).

SO ORDERED.

## REPORT AND RECOMMENDATION

VICTOR E. BIANCHINI, United States Magistrate Judge.

### INTRODUCTION

*Pro se* petitioner Darrell Davenport ("Davenport" or "petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2554. Davenport challenges the constitutionality of his conviction, following a jury trial, on charges of first degree robbery and first degree burglary for which he is currently serving an aggregate sentence of twenty years in prison followed by five years of post-release supervision.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for the issuance of a report and recommendation regarding the disposition of Davenport's petition. For the reasons that follow, I recommend that the petition be dismissed.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The victim in this matter was Johnnie Mae McCallum ("McCallum"), who lived at 194 Emslie Street in the City of Buffalo.

On September 12, 2003, Don Lawson ("Lawson") went over to McCallum's to help out with some work she needed done around the house. McCallum had met Lawson through her now-deceased brother, who previously would help her around the house. On this date, McCallum needed Lawson to replace a window onto its tracks. T.58, 154.[1] Because Lawson had bad shoulders, he asked Davenport to accompany him. T.63–64, 156.

Lawson did not introduce Davenport to McCallum by name. T.220. Lawson walked Davenport through McCallum's home, pointing out what Lawson considered to be poor remodeling work. T.65–67, 158. McCallum was with Lawson and Davenport as they looked around the house. T.67.

Lawson and Davenport stayed at McCallum's house for about fifteen to twenty minutes. T.71, 160. When they left, McCallum gave Lawson a few dollars and asked him to play Lotto for her. T.71, 198–99.

Later, at about 6:00 p.m., McCallum was sitting on the porch waiting for her thirteen-year-old grandson to return home. At the time, McCallum had a load of laundry in the washing machine. T.161–62. As she was checking on the wash in the laundry room in the back of the house to check on the wash, McCallum looked up to see Davenport standing over her. T.164. She recalled that he was wearing the same clothes as he had been wearing when he was at her house with Lawson earlier that day. McCallum asked him where "Rip" (Lawson's nickname) was. Davenport replied that "Rip" was at the store, "putting the numbers in." T.165–66.

In response to McCallum's question as to what he was doing at her house, Davenport ordered her to "strip." T.167. McCal-

---

1. Citations to "T.___" refer to the trial transcript.

lum asked, "Strip what?" T.221. Davenport replied that he wanted "her rings and stuff." T.122. At that point, Davenport pulled out a knife and put it against McCallum's throat. T.168. McCallum told him, "Take it. Just don't hurt me." She said that she "didn't want him to take [her] life," T.169, and pleaded with him not to harm her.

Davenport then cut off McCallum's necklace with the knife. McCallum removed the four rings she was wearing and handed them to Davenport as he continued to hold the knife on her. T.171–73. Davenport then walked McCallum toward the livingroom, holding the knife to her throat and telling her that he would kill her if she made a sound. T.173. As they walked through the house, Davenport took the rest of her rings. T.176.

According to McCallum's recollection, petitioner remained at her house for fifteen or twenty minutes. T.177. When he left, he locked the door behind him; it took McCallum a few minutes to open it because it was a new lock. T.247. She ran outside screaming, and her neighbor called the police; the first call to 911 came in shortly after 7:00 p.m. T.177.

When Officer Strobele arrived on the scene, he found McCallum to be frantic and scared; she was breathing heavily and talking rapidly. T.119. McCallum kept repeating that the robbery had been at her house earlier, and that he was wearing a white shirt and blue jeans. T.119–20. McCallum estimated his height to be 5′10″ tall and his weight to be 230 pounds. T.133. Officer Strobele testified that McCallum kept touching her neck, which

appeared to bear scratch marks and reddened skin. T.122. No arrests were made on the day of the incident.

Two days later, McCallum was describing the robber to a friend of hers from church; this individual said that he had seen the man she suspected and that he was staying at 12 Trammell Walk in Buffalo. H.67–68.[2] McCallum called the police, and they escorted her to that address where the owner of the house gave them permission to come in. McCallum entered the living room and accused Davenport, who resided there, of being the man who had burglarized her home and robbed her.[3] H.29–32. Davenport was placed under arrest. McCallum's jewelry was never recovered. Thereafter, Davenport was indicted for the crimes upon which he was ultimately tried.

At trial, the jury returned a verdict convicting Davenport as charged. Represented by different counsel on direct appeal, Davenport raised the following issues: (1) whether the trial court denied petitioner due process by failing to properly respond to a jury note; (2) whether the trial court erred in failing to instruct the jury that it must find that the "dangerous instrument" employed during the robbery was a knife; (3) whether the verdict was against the weight of the evidence; (4) whether the trial court erred in ruling that the defense had "opened the door" to testimony regarding the suppressed pre-trial identification of petitioner; (5) whether the prosecutor committed misconduct; and (6) whether the sentence was harsh and excessive. The Appellate Division, Fourth Department, of New York State Supreme

**2.** Citations to "H ___" refer to the transcript of the pre-trial *Wade/Huntley* hearing held on April 21, 2004, and June 14, 2004.

**3.** Following a *Wade/Huntley* hearing, the trial court ordered that McCallum's out-of-court identification of Davenport had to be sup-

pressed because it was the fruit of an illegal, warrantless entry by the police into Davenport's residence. In addition, and for the same reasons, the trial court suppressed Davenport's statements to the police. However, McCallum was allowed to identify Davenport in court.

Court unanimously affirmed the conviction. *People v. Davenport,* 35 A.D.3d 1277, 825 N.Y.S.2d 864 (App.Div. 4th Dept. 2006). The New York Court of Appeals denied leave to appeal. *People v. Davenport,* 9 N.Y.3d 842, 840 N.Y.S.2d 768, 872 N.E.2d 881 (N.Y.2007). Upon reconsideration, the Court of Appeals again denied leave. *People v. Davenport,* 9 N.Y.3d 922, 844 N.Y.S.2d 177, 875 N.E.2d 896 (N.Y. 2007).

This federal habeas petition followed in which Davenport presents the following grounds for relief: (1) the trial court violated his due process rights by failing to specifically respond to a question submitted in a jury note; (2) the trial court erred in failing to instruct the jury that it must find that the "dangerous instrument" employed during the robbery was a knife; and (3) the prosecutor committed misconduct that amounted to a deprivation of due process.

Respondent asserts the defense of non-exhaustion with regard to Davenport's arguments concerning the trial court's response to the jury's inquiry during deliberations. Respondent contends that, in the alternative, the claims are meritless, as is Davenport's exhausted claim of prosecutorial misconduct.

## DISCUSSION

### Exhaustion

*Ground Two is unexhausted but procedurally defaulted and barred from habeas review.*

■ Under the habeas corpus statute, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement requires a habeas petitioner to present his federal constitutional claims to the highest court of the state. *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (citing *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990)) (*per curiam* ); *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). The state courts "must be fairly apprised that petitioner is raising a federal constitutional claim and of the factual and legal premises underlying the claim." *Id.* (citing *Morgan v. Jackson,* 869 F.2d 682, 684 (2d Cir.), *cert. denied,* 493 U.S. 920, 110 S.Ct. 284, 107 L.Ed.2d 264 (1989); *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (*en banc* )). A petitioner may fairly present the substance of a federal constitutional claim to the state court without citing "book and verse on the federal constitution." *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). The question is simply whether the state court had a "fair opportunity" to consider the claim. *Id.* at 276, 92 S.Ct. 509. The nature, or petitioner's presentation of, the claim must have been likely to alert the state court to the claim's federal nature. *Daye v. Attorney Gen. of New York,* 696 F.2d at 192.

■ Respondent contends that Davenport cited only state law in support of both of his arguments on direct appeal concerning the trial court's response to the jury, and that his passing reference to the Fifth and the Fourteenth Amendments in one of his point headings was insufficient to "fairly present" the claims in federal constitutional terms. Under the point heading in the appellate brief concerning the first ground for relief, appellate counsel wrote that "[t]he trial court committed reversible error in failing to respond to the deliberating jury's specific question, denying appellant due process of law under the 14th and 5th Amendments to the U.S. Constitution and Article I, § 6 of the New York Constitution." Pet'r App. Br. at 6, Resp't Ex. A.

Given Second Circuit precedent on this issue, and giving petitioner the benefit of the doubt, I find that Davenport "at least arguably complied with the exhaustion requirements set forth in *Daye,*" *Gonzalez v. Sullivan,* 934 F.2d 419, 423 (2d Cir.1991), by making a reference to the Federal constitutional provision allegedly violated.

■ However, with regard to the second ground for relief, I do not believe that appellate counsel's brief was sufficient to put the state courts on notice that Davenport was intending to assert a federal constitutional claim of any kind. There is no reference to a specific constitutional provision, or to the general concepts of due process and the right to a fair trial, in the point heading.[4] Nor is there any mention of any constitutional concepts or federal law anywhere in the argument, which contains only a few citations to New York state court decisions. I agree with respondent that Davenport did not comply with any of the alternative methods presented in *Daye* for alerting the state courts that a constitutional argument was being pressed. Accordingly, I recommend finding that ground two is unexhausted.

■ However, Davenport is now barred from making any additional leave application because one has already been denied by the Court of Appeals. *See* N.Y. COURT RULES § 500.10(a) (only one leave application available); *Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995). He is also foreclosed from bringing these claims in the state courts as a collateral attack on his conviction because the claims either were raised or could have been raised on his direct appeal. *See* N.Y. CRIM. PROC. LAW § 440.10(2)(a), (c).

Because he no longer has remedies available in state court, his claim must be "deemed" exhausted. *Bossett,* 41 F.3d at 829. But because the mechanism by which the claim was constructively exhausted also creates a state-court procedural default, habeas review is barred unless Davenport can establish cause and prejudice for the default or demonstrate that failing to consider his federal claims will result in a "fundamental miscarriage of justice," *see, e.g., Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), which requires a showing of "actual innocence."

Davenport has shown neither cause for his default and prejudice resulting therefrom, nor that dismissal of the petition without addressing the merits of the defaulted claim would amount to a " 'fundamental miscarriage of justice.' " *Jimenez v. Walker,* 458 F.3d 130, 149 (2d Cir.2006), *cert. denied sub nom. Jimenez v. Graham,* —— U.S. ——, 127 S.Ct. 976, 166 L.Ed.2d 740 (2007) (quoting *O'Sullivan v. Boerckel,* 526 U.S. 838, 854, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)). I therefore recommend finding that habeas review of Ground Two should be precluded based on petitioner's inability, on the record before the Court, to overcome the procedural default. Ground Two accordingly should be dismissed.

### Analysis of the Petition

*Ground One, alleging that the trial court failed to meaningfully respond to a jury question, is without merit and should be dismissed.*

■ In its initial instructions to the jury, the trial court read the elements of the offense on which petitioner had been indicted. The robbery charge specified that in the course of the commission of the crime or during immediate flight therefrom, the defendant "threatened the immediate use of a dangerous instrument, to

---

4. "The trial court committed reversible error in failing to instruct the jury that it must find that the dangerous instrument employed was a knife." Pet'r App. Br. at 13, Resp't Ex. A.

wit: a knife." T.362. The burglary count stated that "while in the dwelling [the defendant] threatened the immediate use of a dangerous instrument, to wit: a knife." T.365. The trial court also read the statutory definition of "dangerous instrument" under N.Y. Penal Law § 10.00(13). When recapping the elements needed to be proven beyond a reasonable doubt for each crime, the trial court did not state that the prosecution had to prove that the dangerous instrument was, in fact, a knife. T.364, 367.

During deliberations, the jury sent out a note with the following question:

Can we find him guilty on either count if we have a reasonable doubt that there was a knife involved? If this cannot be answered then can we have the charges and explanations read again?

Defense counsel asserted that in response to this question, the trial court was required to instruct the jury that it could not convict if it had a reasonable doubt that there was a knife actually "involved" in the crime. Defense counsel argued that "[i]t would be a verdict against the law if they have doubt regarding the use of a knife." T.408. The trial court declined to give the explanation that defense counsel had requested, stating, "I believe at this point if I answer question one, I would be invading the province of the jury . . . ." Instead, the trial court announced, it intended "to read to them again the count of the indictment and then the elements as I read the first time, as opposed to answering the specific question." T.407–08. The jury did not seek further clarification.

Petitioner's argument rests upon the assumption that the trial court was required, as a matter of law, to instruct the jury that the burglary and robbery charges necessitated a finding, beyond a reasonable doubt, that the "dangerous weapon" used was, in fact, a knife. However, the crimes of burglary and robbery can be sufficiently proven even without the "dangerous instrument" being seen by the victim or recovered after the crime. *See People v. Hallums,* 157 A.D.2d 800, 801, 550 N.Y.S.2d 401 (App.Div.2d Dept.1990) (holding that the prosecution proved that defendant used "dangerous instrument" to forcibly steal property from complainant, even though complainant could not see object placed against his neck; complainant concluded that it was knife because it felt like knife and left indentation on his neck for a number of days thereafter); *People v. Vincent,* 231 A.D.2d 444, 44–45 (App. Div. 1st Dept.1996) ("The medical evidence establishing that the complainant suffered a smooth cut belies defendant's contention that the evidence was insufficient to establish his use of a dangerous instrument in the attack. Moreover, it was unnecessary for the police to recover the weapon in order to prove his guilt [of second degree assault] beyond a reasonable doubt.").

As respondent notes, although the indictment specified that the "dangerous instrument" used was a knife, there is no single, legally acceptable definition of that term. Furthermore, petitioner's guilt did not hinge on the victim's ability to differentiate between some common understanding of what constitutes a "knife" and other similar handheld sharp-edged instruments consisting of handle attached to a blade used for cutting. In other words, Davenport was not entitled to an acquittal if the jury believed that the "dangerous instrument" with which Davenport allegedly cut through McCallum's necklace may have been more similar to a box-cutter or a straight razor. Notably, this is not a situation where the proof presented, and the instructions given, improperly permitted the jury to consider that petitioner committed the crime in a manner fundamentally different from that alleged in the indictment; there was no evidentiary shift from the prosecution's original theory of

how the crime was committed of which petitioner lacked notice.

Under C.P.L. § 310.30, a jury may request instruction with respect to the law or any other matter "pertinent to the jury's consideration of the case." In response, the court "must give such requested information or instruction as the court deems proper." Determination of the appropriate answer rests within the discretion of the trial court, so long as the answer given does not deprive a defendant of a constitutional right. N.Y. CRIM. PROC. LAW § 310.30. Davenport has not established that the trial court's response to the jury's question represented an abuse of discretion, or violated New York state law. More important, Davenport has not shown that the court's handling of the jury note deprived him of a constitutional right. Accordingly, I recommend that Ground One be dismissed.

*Ground Three, which alleges misconduct by the prosecutor amounting to a deprivation of petitioner's right to a fair trial, is without merit and should be dismissed.*

■ The Supreme Court has held that for a defendant successfully to make out a case of prosecutorial misconduct, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Rather, the relevant inquiry is whether "the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v.*

*DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). Stated another way, to prevail on a claim of prosecutorial misconduct under both Federal and New York State law, the petitioner must demonstrate that the prosecutor's improper remarks caused him "substantial prejudice." *United States v. Bautista,* 23 F.3d 726, 732 (2d Cir.1994).

■ A petitioner is not entitled to relief unless he can show that the comments were more than mere trial error, and were so egregious that they violated the petitioner's due process rights. *Tankleff,* 135 F.3d at 251. Thus even if a prosecutor's comments are technically improper they do not necessarily render the whole trial unfair. A few brief, isolated comments are not likely to substantially affect the verdict, *id.* at 253, and a mere "reasonable possibility" that trial error contributed to a verdict is not enough to grant habeas relief. *Bentley,* 41 F.3d at 824. Rather, the focus of the reviewing court must be on the cumulative effects of the comments. *Floyd v. Meachum,* 907 F.2d 347, 355 (2d Cir.1990). The Second Circuit has explained that "[d]etermining the existence of substantial prejudice involves three factors: the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." *United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir.1981).[5]

■ The first aspect of the prosecutor's summation about which Davenport complains is the prosecutor's statement

---

**5.** The first *Modica* factor examines the totality of the circumstances, asking whether the comments were minor incidents in a prolonged trial or if the entire trial was tainted by prejudice. *Id.* The second factor takes into account any curative steps taken by the trial court, such as striking improper remarks from the record or giving curative instructions to the jury. *Modica,* 663 F.2d at 1182.

The third aspect of the *Modica* analysis entails an assessment of the prejudice resulting from the remarks, which may be informed by "the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial; if the proof of guilt is weak, then the improper statements are more likely to result in reversal." *Modica,* 663 F.2d at 1181.

that there was "no doubt" the victim's identification of petitioner was truthful and accurate. T.337. Respondent argues that if the remark is examined in context, the prosecutor was not simply making a pronouncement urging the jury to "take his word for it." Rather, the comment at issue followed a discussion about why the robbery of McCallum at her home, by an assailant whom she had met and who had been in her house two hours earlier, was different than an on-the-street robbery during which the victim caught only a "fleeting glimpse" of the perpetrator. It was not outside the bounds of fair argument for the prosecutor to contend that, under the circumstances presented, "you just don't make a mistake like that." T.336–37.

Even if this remark were to be considered improper vouching by the prosecutor, the trial court, in response to defense counsel's objection, instructed the jury that it should disregard any personal opinions expressed by the attorneys. T.337. During its general charge on the law, the trial court repeated that admonition to the jury. Those curative instruction were sufficient to blunt any prejudice that may have resulted.

 Next, Davenport contends that the prosecutor improperly argued to the jury that defense counsel had characterized the victim as a liar. Defense counsel objected, stating that he had never said that the victim had lied; this objection was overruled on the basis that it was fair comment in response to defense counsel's summation. *See* T.339–41. Petitioner concedes that during summation, defense counsel did ask the jury to consider whether the victim might be covering up for someone or making petitioner the "fall guy," stating, "It's apparent that Mr. Lawson and Miss McCallum got together in an attempt to work out their stories and they failed. And that's what happens when you

don't tell the truth, your little lies catch up to you." T.344. It was incumbent upon defense counsel to attempt to assail the weaknesses in the prosecution's case and, in a case that was based almost entirely on one witness' testimony, he had no choice but to attempt to undermine that witness' credibility. That said, as the Second Circuit has stated, "[u]nder the invited or fair response doctrine, the defense summation may open the door to an otherwise inadmissible prosecution rebuttal." *United States v. Tocco*, 135 F.3d 116, 130 (2d Cir.1998) (citing *United States v. Robinson*, 485 U.S. 25, 32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988)). "[W]here the defense summation makes arguments ₐand allegations against the government, the prosecutor may respond to them in rebuttal." *Id.* (citing *United States v. Rivera*, 971 F.2d 876, 883 (2d Cir.1992); *United States v. Bagaric*, 706 F.2d 42, 60 (2d Cir.1983)). Given the "wide latitude" to which "[t]e prosecution and the defense are generally entitled … during closing arguments," *id.*, I do not believe that Davenport has made out a violation of federal law on the facts of this case.

 Davenport also contends that the prosecutor improperly appealed the jury's sympathy by stating that "was robbed at knifepoint in her own home, humiliated and abused by this defendant." T.336. Defense counsel did not object to this statement. The Second Circuit has instructed that "[i]f the defendant failed to make timely objection to a statement contained in the prosecutor's summation, the statement will not be deemed a ground for reversal unless it amounts to a 'flagrant abuse.'" *United States v. Rivera*, 22 F.3d 430, 437 (2d Cir.1994) (quoting *United States v. Ortiz*, 857 F.2d 900, 904 (2d Cir. 1988), *cert. denied*, 489 U.S. 1070, 109 S.Ct. 1352, 103 L.Ed.2d 820 (1989) and citing *United States v. Perez*, 702 F.2d 33, 37 (2d

Cir.), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2457, 77 L.Ed.2d 1336 (1983)). Although it was unnecessary and improper for the prosecutor to invoke this overly dramatic language in a ploy to appeal to the jury's emotions and invite them to sympathize with the victim, it was not tantamount to "flagrant abuse."

■ "A prosecutor's statements during summation, if improper, will result in a denial of due process rights only if, in the context of the entire summation, they cause the defendant substantial prejudice." *United States v. Rivera,* 22 F.3d 430, 437 (2d Cir.1994) (citing *United States v. Casamento,* 887 F.2d 1141, 1189 (2d Cir. 1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990); *United States v. Tutino,* 883 F.2d 1125, 1136 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990)). In the instant case, the comments were confined to the prosecutor's summation. The trial court sustained one of trial counsel's objections to prosecutorial vouching and gave a contemporaneous curative instruction. The jury also was given the instruction during the court's general charge that it was not to regard the attorneys' summation arguments as evidence. The comments that were improper were isolated comments and were not "too prejudicial for ... a curative instruction to mitigate their effect." *Donnelly v. DeChristoforo,* 416 U.S. 637, 644, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Furthermore, given the substantial evidence of Davenport's guilt, such isolated comments in summation had no substantial effect on the jury's verdict in light of the circumstances as a whole.

The Supreme Court has instructed that "[i]nappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *United States v. Young,* 470 U.S. 1, 11–12,

105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), *accord, e.g., People v. Galloway,* 54 N.Y.2d 396, 446 N.Y.S.2d 9, 430 N.E.2d 885 (N.Y. 1981) (agreeing that reversal of a conviction " 'is properly shunned when the [prosecutorial] misconduct has not substantially prejudiced a defendant's trial' ") (quoting *United States v. Modica* ). On the present record, Davenport has not met the heavy burden facing a habeas petitioner seeking reversal of his conviction on the basis of alleged prosecutorial misconduct. Accordingly, I recommend that petitioner's Ground Three claiming a denial of due process based upon improper comments by the prosecutor be dismissed.

**CONCLUSION**

For the reasons set forth above, the Court recommends that the petition for a writ of habeas corpus filed by Darrell Davenport be denied. Furthermore, the Court finds that Davenport has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000). Therefore, the Court recommends that no certificate of appealability should issue with respect to any of petitioner's claims.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a) (3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985, 990–91 (1st Cir.1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir.1988); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

**IT IS SO ORDERED.**

Apr. 29, 2008.